# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### MAY SESSION, 1999

FILED

July 8, 1999

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,     )
                           )
     Appellee         )
                           )
vs.                    )
                           )
LOUIS LAVERGNE,      )
                           )
     Appellant      )

No. 01C01-9803-CR-00128

DAVIDSON COUNTY

Hon. J. Randall Wyatt, Jr., Judge

(Voluntary Manslaughter)

---

For the Appellant:

**Mark C. Scruggs**
Attorney for Appellant
P. O. Box 158932
Nashville, TN 37215-8932

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Marvin E. Clements, Jr.**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Victor S. (Torry) Johnson III**
District Attorney General

**Katy Novak Miller**
Asst. District Attorney General
Washington Sq., Suite 500
222-2nd Avenue N.
Nashville, TN 37201-1649

---

OPINION FILED: _____

AFFIRMED; SENTENCE MODIFIED

**David G. Hayes**
Judge

## OPINION

The appellant, Louis Lavergne, pled guilty to the offense of voluntary manslaughter in the Davidson County Criminal Court.[1] Pursuant to the plea agreement, both the length of the sentence and the manner of service were submitted to the trial court for determination. The trial court subsequently imposed a four year sentence to be served in the Department of Correction. In this appeal, the appellant challenges both the length of the sentence and the trial court's denial of a sentencing alternative to total confinement.

After a review of the record, the appellant's four year sentence is affirmed, however, the manner of service is modified to reflect a split confinement sentence of six months confinement in the local jail or workhouse with the remainder of the four year sentence to be served on supervised probation.

## Background

At the time of the offense, the forty-six year old victim, Paul Crosson, had been married to the appellant's mother, Nora Lee, for six years. Although the marriage had encountered difficult times, during the latter years, the couple enjoyed a good relationship and a stable marriage. The couple moved from Mississippi to Nashville with Nora Lee's two children, the appellant and his younger sister, and, eventually, started a carpet cleaning business. Both Paul and Nora Lee worked in the business.

---

[1]The appellant was charged by indictment with the second degree murder of his step-father Paul Crosson.

2

January 6, 1997, began as a typical day, both Paul and Nora Lee sharing domestic chores within the home. Later that morning, Paul went to work and Nora Lee proceeded to complete errands Paul had asked her to do. Paul returned from work around 4:30 that afternoon. Upon entering the residence, Paul kissed Nora Lee. Nora Lee then gave Paul a message involving their carpet cleaning business. However, she could not remember the details of the telephone message. Paul became angry. He "grabbed [her] by the throat and threw [her] against the wall." Nora Lee fled to the safety of her bedroom; but Paul followed her. He "started cussing [her] and cussing a whole lot of other people. . . . And just kept on hitting and hitting and hitting." Despite her pleas for mercy, "[h]e kept on pushing [her], throwing [her] against the wall, hitting [her]."

The appellant, who had been in bed asleep, was awakened by the commotion. He remained in his room because he did not want to become involved in the argument. When the argument subsided, the appellant got dressed, went into the living room, and confronted his crying mother. At this point, Paul had left the residence. The appellant observed red marks on his mother's neck. Nora Lee confirmed that Paul had grabbed her by the throat and slammed her against the wall. The appellant "sat there for a little while," before "writing out [his] check for [his] truck payment," which was due that day.

Meanwhile, Paul Crosson reinitiated his argument with Nora Lee. Paul "swung at her a couple of times, trying to slap her or something." The appellant instructed his mother "to sit down and be quiet, just to leave [Paul] alone." Paul left the room. Nora Lee went into the couple's bedroom; Paul followed her and closed the door. The argument resumed. The appellant heard his mother screaming and Paul shouting profanities and derogatory comments at her. In fear for his mother's life, the appellant went outside to his truck, retrieved a .25 caliber pistol, returned to the house, and called for his mother. He opened the bedroom door and saw Paul

3

on top of his mother, choking her with his left hand, and hitting her with his right hand. The appellant again called for his mother and simultaneously fired his weapon. Paul looked up but continued hitting Nora Lee. Realizing that his first shot had missed his stepfather, the appellant moved closer, within five to six feet of his victim, and fired the weapon two more times, hitting Paul in the head with both shots. The appellant ran into the dining room, put the gun on the kitchen table, and called 911. He then went outside and waited for the paramedics.

At the subsequent sentencing hearing, proof was introduced by both the defense and the prosecution as to the character of the victim, Paul Crosson. The State's witnesses, although admitting to turbulent times early in Paul and Nora Lee's marriage, testified to the loving relationship between the couple. Countering this proof, the defense presented testimony of Paul Crosson's violent nature. Notwithstanding the contradictory evidence presented by both parties, the evidence is undisputed that the victim, Paul Crosson, had only physically assaulted Nora Lee on two prior occasions early in their marriage. Additionally, the appellant testified that Paul Crosson had only assaulted him on one occasion during the parties' six year marriage. This incident occurred when the appellant was fifteen years old and had shown a pornographic video tape to Crosson's eight year old nephew.

While the character of the victim is relevant in assessing the culpability of the defendant in the commission of the offense, we fail to find the exhaustive introduction of testimony regarding the "life" of Paul Crosson relevant to the consideration of the principles inherent in determining the sentence that will best serve the needs of the <u>appellant</u> and society.[2]  Moreover, despite the number of

---

[2]A large portion of the 229 pages of sentencing testimony plus numerous exhibits in the record are totally irrelevant and may be properly characterized as an assault upon the victim's character, *e.g.*, testimony relating to the victim's discharge from the military due to heroin addiction, his prior felony conviction, his incarceration in the penitentiary, his diagnosis with syphilis, etc. We note that the majority of this evidence is over twenty years old. Additionally, the record also reveals that both the State and the defense presented irrelevant information relating to Nora Lee Crosson, *i.e.*, she is a former prostitute and drug dealer, and the family in general, *e.g.*,

witnesses presented and the numerous medical/psychiatric exhibits introduced to establish the character of the deceased victim, the only substantive evidence relating to the character of the appellant is contained in the presentence report submitted by the State. The appellant, a twenty-one year old at the time of the crime, is a high school graduate and has no prior convictions as an adult or as a juvenile. He admits to limited use of alcohol and, although he previously experimented with illegal substances, denies current use of such substances. The appellant has maintained continuous employment since October 19, 1994, changing employment only to accept better paying positions. Finally, numerous letters were submitted for the trial court's consideration attesting to the admirable qualities of the appellant, *i.e.*, he is hard-working, polite, friendly, dependable, considerate, and loyal.

Based on this evidence and the circumstances of the offense, the trial court, applying four mitigating factors and two enhancing factors, imposed a sentence of four years for the offense of voluntary manslaughter. Additionally, in order to avoid depreciating the seriousness of the offense, the trial court ordered that the sentence be served in the Department of Correction.

**Analysis**

The appellant argues that the trial court erred by imposing a sentence of four years and by denying him a sentencing alternative to total incarceration. Appellate review of a sentence is *de novo,* with a presumption that the determinations made by court from which the appeal is taken is correct. Tenn. Code Ann. § 40-35-

---

they all smoked marijuana together. We would acknowledge, however, that evidence of the victim's character indicative of his abusive behavior towards his wife, that is, reflective of the nature of the circumstances of the offense, would be relevant in making the appropriate sentencing determination.

5

401(d)(1997). This presumption only applies, however, if the record shows that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the present case, the record supports application of the presumption. Moreover, the burden is upon the appellant to show that the sentence imposed is improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401. In determining whether the appellant has met this burden, this court must consider factors listed in Tenn. Code Ann. § 40-35-210(b)(1997) and the sentencing principles described in Tenn. Code Ann. §§ 40-35-102 and -103 (1997).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn.Crim.App.1991).

## A. Length of Sentence

Again, the appellant contends that his offense does not warrant a sentence of four years incarceration in the Department of Correction. The record reflects that the trial court applied two enhancing and four mitigating factors.[3]

---

[3]In imposing a sentence of four years, the trial court determined that the record supported application of the following mitigating factors:
> (2) The defendant acted under strong provocation;
> (3) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
> (11) The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct; and
> (12) The defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime.

Tenn. Code Ann. § 40-35-113 (2), (3), (11), (12) (1997). Additionally, the court applied enhancement factors (9) and (10):
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense; and

We find the trial court's determinations to be supported by the record and will not disturb its findings.[4] Notwithstanding, the appellant asserts that the trial court failed to properly weigh the four mitigating factors and two enhancement factors. Accordingly, he contends that he is entitled to a three year sentence, the minimum sentence within the range.

In determining the appropriate sentence for a felony conviction, the sentencing court must, if there are both enhancing and mitigating factors, start at the minimum sentence within the range, then enhance the sentence in accordance with the enhancing factors, then reduce the sentence in accordance with the mitigating factors. See Tenn. Code Ann. § 40-35-210(e) (1997); State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1996). There is no mathematical formula of adding and subtracting the enhancement and mitigating

---

(10) The defendant had no hesitation about committing a crime when the risk to human life was high.

Tenn. Code Ann. § 40-35-114 (9), (10) (1997).

[4]In his brief, the appellant concedes that the trial court misapplied one unspecified mitigating factor and argues the misapplication of one unspecified enhancement factor. Essentially, his argument relies upon the principle that both factors are inherent in the offense of voluntary manslaughter. Initially, we note that it is not the duty of this court to speculate as to which factors are challenged by the appellant. It is incumbent upon the appellant to state with particularity the grounds upon which he seeks relief. The appellant has failed to do so. This issue is waived. See Tenn. R. App. P. 27(a)(7). Regardless of the contested enhancement factor, we find any challenge thereupon unwarranted under the facts of the present case. The proof supports a finding that a firearm was used in the commission of the offense. See Tenn. Code Ann. § 40-35-114(9). Additionally, factor (10) is appropriately applied in circumstances where persons others than the victim are present and could have been injured. See State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1994). The proof presented revealed that the appellant's mother was beneath the victim when multiple shots were fired at the victim's head.

We, likewise, find no error in the trial court's application of mitigating factors (2), (3), (11) and (12). While essential elements of the offense cannot be enhancement factors under Tenn. Code Ann. § 40-35-114, there is no corresponding limitation for mitigating factors. Tenn. Code Ann. § 40-35-113. Thus, "double mitigation" is not prohibited by the statute. Nonetheless, "double credit" need not be automatically applied in voluntary manslaughter cases. Indeed, while the proof of provocation may have been adequate to reduce the degree of culpability, the nature and circumstances of the killing do not necessarily demonstrate the kind of "strong provocation" required to mitigate a sentence. State v. David Paul Martin, No. 03C01-9412-CR-00448 (Tenn. Crim. App. at Knoxville, Oct. 13, 1995), aff'd on other grounds by, 950 S.W.2d 20 (Tenn. 1997). Moreover, the decision to double mitigate is within the discretion of the trial court. See Martin, No. 03C01-9412-CR-00448. As the propriety of the trial court's application of mitigating factors suggestive of provocation are not challenged on appeal, we will not disturb the trial court's findings.

7

factors to calculate the appropriate sentence. See Boggs, 932 S.W.2d at 475. "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. (citations omitted).

The appellant, a range I offender, was convicted of voluntary manslaughter, a class C felony. Accordingly, the appropriate sentencing range is "not less than three (3) nor more than six (6) years." Tenn. Code Ann. § 40-35-112(a)(3) (1997). The trial court, after weighing and considering the enhancing and mitigating factors, imposed a sentence of four years. Applying the presumption of correctness afforded the trial court's decision, we conclude, upon *de novo* review, that imposition of a sentence of four years is not excessive.

## B. Alternative Sentence

In his final argument, the appellant contends that the trial court erred by imposing a sentence of total confinement, rather than granting a sentencing alternative, specifically that of total probation. Indeed, the trial court denied the appellant any form of alternative sentence based upon the "seriousness of the offense." See Tenn. Code Ann. § 40-35-103(1)(B)(1997). Specifically, the trial court reasoned:

> [the appellant] could have done something a little different than what [he] did on that day when [he had] been going around with that loaded weapon in [his] possession. And I think the fact that [he] had that loaded weapon causes us to be here now. And had [he] not had it, you would probably have had a domestic call . . . . And to put [the appellant] on probation today would depreciate the seriousness of what [he] did that I do not find was justified. It might be an excuse that [he's] got, but it's not a reason that [he] had to shoot this man in the head twice and kill without him ever having a chance to say anything.

The appellant, a standard offender of a class C felony, in the absence of evidence to the contrary, is considered a favorable candidate for alternative

8

sentencing.  See  Tenn. Code Ann. §§ 40-35-102(5), -102(6); see also  State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995) (citing State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993)). Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary.  See, e.g., Tenn. Code Ann. § 40-35-103(1)(A)-(C).  Conversely, the defendant has the burden of establishing his suitability for full probation, regardless of the applicability of the statutory presumption.  See  Tenn. Code Ann. § 40-35-303(b)( 1997); Bingham, 910 S.W.2d at 455.

In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree" and the nature of the offense must outweigh all factors favoring a sentence other than confinement.  Bingham, 910 S.W.2d at 454 (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)).  We fail to find adequate support in the record to conclude that the circumstances of the offense in the present case meet the standards announced in Hartley. The mere fact that a death occurred or that a firearm was employed in the commission of the offense are not sufficient, without more, to justify a sentence of total confinement.  See Bingham, 910 S.W.2d at 454.  Moreover, the overwhelming evidence favors imposition of an alternative sentence.  Indeed, the appellant is a youthful offender with no prior criminal history and an excellent work history.  See, e.g., Bingham, 910 S.W.2d at 454.  We conclude that the State has not met its burden of establishing the necessity of a sentence of total confinement.  Thus, the question remains as to the appropriate sentencing alternative.

The appellant asserts that he is entitled to a sentence of total probation. Again, the appellant  bears the burden of establishing suitability for total probation.

In order to meet his burden, the appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Bingham, 910 S.W.2d at 456 (citation omitted). In determining the defendant's suitability, the sentencing court should consider: (1) "the nature and circumstance of the criminal conduct involved," Tenn. Code Ann. §40-35-210(b)(4) (1997); (2) the defendant's potential or lack of potential for rehabilitation , Tenn. Code Ann. § 40-34-103(5); (3) whether a sentence of total probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and (4) whether a sentence other than total probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). See Bingham, 910 S.W.2d at 456.

Again, the fact that the appellant's criminal conduct resulted in the death of another cannot, by itself, support a denial of total probation. See Bingham, 910 S.W.2d at 456. However, the facts and circumstances which surround the criminal act are appropriate considerations. Id. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. Bingham, 910 S.W.2d at 456 (citation omitted). The circumstances of this offense, as testified to by the appellant and his mother, indicate that, although the appellant's actions were the result of his fear for his mother's life, other alternatives were available to the appellant. Indeed, the appellant's own testimony revealed that, prior to the shooting, he sat in the living room apparently unperturbed as the argument ensued and later he was again present as he wrote out a check for his truck payment. Additionally, the appellant conceded that the victim had left the house on at least two occasions during the argument. While we do not agree with the trial court's conclusion that the presence of alternatives other than shooting the victim requires a sentence of total confinement, we do agree that this factor, combined with the manner of the shooting, *i.e.*, two gunshot wounds to the back of the head, are sufficient to deny a

sentence of total probation. Accordingly, we conclude that the appellant has not met his burden of establishing his suitability for a sentence of total probation.

Notwithstanding, we do conclude that a sentence of split confinement would both serve the ends of justice and fulfill the needs of the appellant. See Tenn. Code Ann. § 40-35-306 (1997). While we affirm the trial court's imposition of a four year sentence, the manner of service of this sentence is modified to reflect a period of six months confinement in the local jail or workhouse with the remainder of the four year sentence to be served on supervised probation. This case is remanded to the trial court for entry of a judgment consistent with this opinion and for the imposition of any conditions of probation reasonably related to the purpose of the appellant's sentence.

_____
DAVID G. HAYES, Judge

CONCUR:


_____
JERRY L. SMITH, Judge


_____
NORMA MCGEE OGLE, Judge