STATE of Tennessee, Appellee,

v.

Karen Sue BOGGS, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

March 28, 1996.

Permission to Appeal Denied by
Supreme Court Oct. 14, 1996.

Mark E. Stephens, District Public Defender, Paula R. Voss, Timothy McLaughlin, Asst. Public Defenders, Knoxville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Hunt S. Brown, Assistant Attorney General, Criminal Justice Division, Nashville, Randall Eugene Nichols, District Attorney General, John W. Gill, Asst. District Attorney General, Jerry Cunningham, Special Prosecutor, Knoxville, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Karen Sue Boggs, pled guilty to one count of vehicular homicide as the proximate result of intoxication in the Criminal Court of Knox County. Following a sentencing hearing, the trial court imposed a six year sentence of split confinement, with one year of confinement followed by five years of supervised probation. The appellant appeals the sentence presenting three issues for our review. First, the appellant contends that the trial judge erred by not recusing himself from the sentencing phase of the appellant's case. Second, the appellant argues that the trial court erred by denying the appellant a sentence of total probation. Finally, the appellant contends that her sentence is excessive because: (1) there was insufficient proof to support the use of the victim's vulnerability as an enhancement factor; (2) the trial court gave excessive weight to the appellant's prior criminal record; (3) the sentence does not reflect the presence of mitigation factors found by the trial court; and (4) the sentence

does not conform to the sentencing considerations set forth in the Criminal Sentencing Reform Act of 1989.

After a review of the record, we affirm the judgment of the trial court.

## I. Factual Background

Evidence at the sentencing hearing revealed the following facts leading to the ultimate death of the victim in this case, Katie Spangler. Shortly after awakening on December 3, 1993, the appellant began arguing with her live-in boyfriend. Apparently, this argument continued throughout the course of the day. The appellant testified that, after their first argument, her boyfriend left in her car, and she consumed two beers. Around 3:00 p.m. that afternoon, the appellant walked to a nearby tavern. Before she reached the bar, her boyfriend approached her, and, again, they argued. After a struggle, her boyfriend left in her car, and she entered the bar. Once inside the bar, the appellant drank another three or four beers and had something to eat. While the appellant was at the bar, her boyfriend returned, threw her car keys at her, and left. Between 5:00 and 5:30 p.m., the appellant finished her beer, left the bar, and attempted to drive to the home of a cousin. Her cousin's residence is located on Simpson Road, approximately three-quarters of a mile from the bar. While entering a curve on Simpson Road, the appellant lost control of her car just before reaching the Spangler residence. Deputy Charles Lassiter, an accident reconstruction expert with the Knox County Sheriff's Department, testified that:

> [The car] crossed three different yards . . . went through a hedge . . . sideswiped a tree, went under a guide wire, through another hedgerow, knocked down a small tree . . . crossed [another] lawn and it was during this traveling across this lawn that the victim was struck and killed. The vehicle impacted a bird bath, continued on, crossed a yard, went across Allen Road into the third yard, went a fair distance through that yard before it finally impacted and came to rest against a large tree.

The appellant remained at the scene until the police arrived and admitted to being the driver of the car. However, because she had been injured as a result of the incident, no further questioning occurred and she was taken to the hospital for treatment. At the hospital, a blood sample from the appellant was drawn and she was treated for multiple lacerations. At the sentencing hearing, her medical records were admitted as evidence and showed a blood serum alcohol level of .235. The trial court found this level equivalent to a blood alcohol level of .16 to .20 percent and, therefore, found that the appellant was intoxicated at the time of the offense.

The victim's daughter, Linda Spangler, testified that she was at her mother's home on the day of the offense. She stated that her mother, a sixty-seven year old retiree, suffered from diabetes, problems with her knees, and a total loss of hearing in her right ear. This hearing impairment prevented the victim from hearing sounds behind her.

Ms. Spangler testified that on the day of the offense, her mother was outside working on Christmas lights. Ms. Spangler heard a loud noise and went outside to investigate. She saw her mother lying in the yard with "her clothes exploded from her body." Spangler admitted that at first she thought her mother had been electrocuted and called 911. However, shortly thereafter, she learned from a neighbor that her mother had been hit by a car.

According to Ms. Spangler, the appellant approached the spot where the victim lay and asked, "Is she dead?" Ms. Spangler stated that "[A]t that point in time, it seemed to me that her concern was not so much that a person had been killed, but that there could be consequences she might suffer because of it."

On behalf of the appellant, a probation officer testified that, in December, 1988, the state of South Carolina placed the appellant on probation for a term of five years following a felony conviction for possession of marijuana for resale. In July, 1990, her probation was transferred to Tennessee, and on April 12, 1991, after only two years, she was discharged from probation based upon her exemplary conduct.

The appellant's family testified with respect to the character of the appellant, the effect this incident had on her life, and the support they would provide to the appellant if she were released on probation. A former employer testified that the appellant was a good worker and was not known to consume alcohol. A counselor with Baptist Hospital testified that the appellant completed an in-patient drug and alcohol abuse program at the hospital on August 24, 1994. The counselor observed that the appellant seemed highly motivated to remain sober.

The appellant testified that she was forty years old. She stated that, prior to the offense, she was employed at Shoney's, however, since that time, she was released from her position due to the charges filed against her. Since her termination at Shoney's, the appellant has maintained employment at Burger King.

Additionally, the appellant admitted that she is an alcoholic, and she is now receiving out-patient treatment at Baptist hospital and attending Alcoholics Anonymous meetings. The appellant confessed that, prior to this offense, she would normally purchase a six or twelve-pack of beer every day. She stated that she continued to drink for four to five months after this offense because she "could not deal with it." She indicated, through her testimony, that she would do whatever was necessary to make sure nothing like this ever happens again. She also expressed her remorse for the death of Katie Spangler, and admitted to her intoxication and excessive use of alcohol on the day of the offense.

When questioned about her prior felony conviction for marijuana and a shoplifting charge in South Carolina, the appellant did not contest her guilt but maintained that she was a victim of circumstance who "was at the wrong place at the wrong time." She added that she entered a guilty plea to the marijuana charge and received five years probation. The appellant stated that, while on probation for the marijuana charge, she completed a drug and alcohol program and remained sober until her return to Tennessee in 1990.

The appellant stated that she has continued the relationship with her boyfriend of two years. She testified that her boyfriend is an alcoholic and, despite her efforts to remain sober, he continues to drink in front of her. Moreover, she admitted that, even after this offense, she has gone with her boyfriend to purchase alcohol and has accompanied him to bars on several occasions. She resided with her boyfriend at the time of the hearing although she stated that she was trying to get into a half-way house.

After reviewing the evidence presented at the sentencing hearing, the trial court sentenced the appellant to six years as a range I offender of a class C felony. The court ordered that the appellant serve this sentence in a term of split confinement. The appellant was ordered to serve one year of incarceration with the remaining five years to be served on intensive probation.

## II. Recusal of Trial Judge

The appellant argues that the trial judge's comments at the guilty plea hearing indicate that, prior to hearing the evidence at the sentencing hearing, the judge determined that a sentence of incarceration would be appropriate given the nature of the crime (vehicular homicide).

On July 19, 1994, the appellant entered a plea of guilty to one count of vehicular homicide without the benefit of a plea agreement. During the guilty plea hearing, the trial judge stated:

I will be very candid with you, Ms. Boggs, and that is, in vehicular homicide cases—in any type of homicide cases, even in the class-C classification—it is unusual for this Court to grant probation in those cases. As a, matter of fact, I cannot recall a case I have handled in which I have given probation in that type of case.

So I want to be up front and candid with you about that so that you understand that you are likely facing a term of imprisonment in this case; do you understand that?

On August 16, 1994, the appellant filed a motion to have the trial judge recuse himself at the sentencing phase based upon his comments at the guilty plea hearing. In support of this motion, the appellant argued that the trial judge could not be fair and impartial in arriving at the disposition of her case.

On August 25, 1994, the trial court denied the appellant's motion for recusal. In doing so, the trial judge stated that, because the appellant did not have a prior agreement as to punishment, he felt compelled to review the issues of probation and incarceration. With respect to probation, he added "that a person convicted of a crime involving the loss of human life has the obligation ... of carrying the burden of proof to show that they are entitled to [probation]...."[1] Additionally, the trial judge stated:

> ... I have not decided what is going to be the final disposition of this case. I have not decided what the sentence is going to be. I have not reached [that] point in the decision-making process.
>
> When I discussed with you ... the likelihood of imprisonment, I wanted you to understand that, because of the nature and extent of this crime and the circumstances involving it, that there was a likelihood that you would serve some time in prison....
>
> I ... do not feel that I have prejudged this case or made any predetermination of the disposition of this case. I have now the benefit of a pre-sentence investigation that has come in this week. I have the benefit of some correspondence in this case from people on both sides of the issue, and I intend to continue in this case. I decline to recuse myself in this matter....
>
> So I have no blanket policy in these cases. I don't intend to ever have a blanket policy. I intend to approach every case on its own merits and address the issues that are presented by that particular case....

A trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case, or whenever he believes his impartiality can reasonably be questioned, *State v. Cash*, 867 S.W.2d 741, 749 (Tenn.Crim.App.1993); *see also Lackey v. State*, 578 S.W.2d 101, 104 (Tenn.Crim.App.1978). Moreover, recusal is warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality. *Alley v. State*, 882 S.W.2d 810, 820 (Tenn.Crim.App.1994). Any comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case. *Id.* at 822. (citations omitted).

In the instant case, the trial judge indicated that he fully understood the need for impartiality and an open mind before entering the sentencing phase of the proceedings. He also explained that his comments at the guilty plea hearing were made to ensure that the appellant was voluntarily entering a guilty plea with the understanding that incarceration could be a consequence of her plea. The record indicates that the trial judge followed the proper sentencing procedure and applied applicable sentencing principles in determining the appellant's punishment. The matter of recusal is left to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record. *Cash*, 867 S.W.2d at 749; *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn.Crim.App.1991). Furthermore, the issue to be determined is not the propriety of the judicial conduct of the trial judge, but whether he committed an error which resulted in an unjust disposition of the case. *State v. Hurley*, 876 S.W.2d 57, 64 (Tenn.1993). In the present case, we cannot conclude that the trial judge abused his discretion, and we later conclude that the trial court did not commit error in sentencing the appellant. Thus, the appellant's contention is without merit.

### III. Sentencing

Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn.Code Ann. § 40–35–401(d)(1990). This presumption only applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). In the case before us, the

---

1. We note that the fact that a death occurred is not relevant in determining the burden of proof.

trial court correctly applied sentencing principles, thus, the presumption applies.

In making our review, this court must consider the evidence heard at trial and at sentencing, the presentence report,[2] the arguments of counsel, the nature and characteristics of the offense, any mitigating and enhancement factors, the defendant's statements, and the defendant's potential for rehabilitation. Tenn.Code Ann. §§ 40–35–102, –103(5), –210(b) (1990); *see also State v. Byrd,* 861 S.W.2d 377, 379 (Tenn.Crim.App. 1993) (citing *Ashby,* 823 S.W.2d at 168). The burden is on the appellant to show that the sentence imposed was improper. Sentencing Commission Comments, Tenn.Code Ann. § 40–35–401(d).

### A. Enhancement and Mitigating Factors

The trial court found that two enhancement factors and one mitigating factor are present and imposed the maximum six year sentence. Specifically, the trial court found that "the defendant has a previous history of criminal convictions or criminal behavior," Tenn.Code Ann. § 40–35–114(1) (1994 Supp.); and that "a victim of the offense was particularly vulnerable because of age or physical or mental disability," Tenn.Code Ann. § 40–35–114(4)(1994 Supp.). Although the court found that no enumerated statutory mitigating factors were present, the court applied two non-enumerated mitigators: the appellant's remorsefulness and her acceptance of responsibility for the crime. The appellant contends that "the trial court erred in the application of certain enhancement factors to the sentence and in the weight accorded them; [the court] failed to follow the statutory scheme for applying mitigation and enhancement factors; and [the court] failed to comply with the sentencing requirements and alternatives set forth in the Sentencing Reform Act of 1989."

### 1. Victim's Vulnerability

■ The trial court found that the victim was especially vulnerable because of her age

and physical condition. The victim was sixty-seven years old, had an injured knee, and was hearing impaired. The trial judge reasoned that, "had Mrs. Spangler had all her capabilities—had full hearing capabilities, had full mobility abilities—that, under the facts and circumstances of this case, she would have been in a better position to avoid being struck by this vehicle." The appellant contends that this factor was erroneously applied because Linda Spangler, the victim's daughter, was the only witness to testify regarding her mother's physical condition. The appellant argues that medical proof is necessary to corroborate the testimony of a non-expert regarding an individual's vulnerability due to physical infirmities. Moreover, the appellant insists that the State failed to show that the victim's physical condition had any bearing on the outcome of the offense.

■ When applying the "vulnerability" of the victim" as an enhancement factor, "the relevant inquiry is whether the victim was *particularly vulnerable* because of age or physical or mental disability." *State v. Adams,* 864 S.W.2d 31, 35 (Tenn.1993) (emphasis in original). A victim is particularly vulnerable within the meaning of this enhancement factor when the victim lacks the ability to resist the commission of the crime due to age, a physical condition, or a mental condition. *State v. Butler,* 900 S.W.2d 305, 313 (Tenn.Crim.App.1994). In *Adams,* the supreme court noted that "the vulnerability enhancement relates more to the natural physical and mental limitations of the victim than merely to the victim's age."[3] *Adams,* 864 S.W.2d at 35. Additionally, the State bears the burden of proving the victim's limitations rendering him or her particularly vulnerable. *Id.* In the present case, the State offered proof through the testimony of Linda Spangler as to the victim's age and to her physical disabilities. The State's proof is sufficient to establish that the victim was "particularly vulnerable."

However, the appellant questions the sufficiency of the State's proof as Ms. Spangler's

---

2. Although the proof demonstrates that a presentence report was prepared, it was not included in the record for our review.

3. Mere proof of the victim's age is not sufficient to establish vulnerability. *See State v. Hayes,* 899 S.W.2d 175, 185 (Tenn.Crim.App.1995).

testimony was not corroborated by expert medical testimony. From the facts presented, we conclude that the State sufficiently established the victim's vulnerability through Ms. Spangler's testimony. The following colloquy between Ms. Spangler and Jerry Cunningham, the special prosecutor, occurred at the hearing:

> MR. CUNNINGHAM: Describe her health to His Honor, please.
>
> MS. SPANGLER: She suffered from diabetes and had—within the last year or two, had begun giving herself insulin shots. Earlier on in the year, she had knee surgery—arthroscopic surgery on her knee—and the physician told us that soon she would have to have a total knee replacement.
>
> MR. CUNNINGHAM: Was her motion limited in any way?
>
> MS. SPANGLER: Yes, sir, to a certain extent, it was.
>
> MR. CUNNINGHAM: All right. Could she run?
>
> MS. SPANGLER: No.
>
> MR. CUNNINGHAM: What about her hearing, and her vision, and those senses?
>
> MS. SPANGLER: Well, she had had cataract surgery, but she saw very well afterwards. But the hearing in her right ear, she couldn't hear if her back was to you. . . .
>
> MR. CUNNINGHAM: All right. You mentioned her hearing. If you came up behind her and spoke to her or a car approached her from behind, could she hear that?
>
> MS. SPANGLER: No.

Tenn.R.Evid. 701 permits the use of lay testimony in certain situations. However, in order to have any probative value, the lay testimony must be based upon factual predicate found in facts admissible in evidence. *See* J. Houston Gordon, *The Admissibility of Lay and Expert Opinions*, 57 Tenn.L.R. 103 (1989) (citing *Securities Inv. Co. v. White*, 19 Tenn.App. 540, 91 S.W.2d 581, 587 (1935)). Under Rule 701, a lay witness' opinion is only admissible when the following conditions are met: (1) there is no special knowledge, skill, experience or training required for the opinion; (2) the witness cannot easily express accurately what he or she saw without expressing the opinion; and (3) the expression of the opinion will not prejudicially mislead the trier of fact. *Id.* at 104. Thus, the admissibility of a lay witness' testimony rests on whether the facts in issue are within the range of knowledge or understanding of ordinary laymen. *Id.* at 106 (citations omitted). Likewise, expert testimony is only necessary when the average person would not be knowledgeable on the subject matter at issue. *Id.* at 106–107 (citing *Kinley v. Tennessee State Mutual Insurance Company*, 620 S.W.2d 79 (Tenn.1981)). In the case before us, Ms. Spangler had the requisite knowledge of her mother's physical condition. Her testimony was based upon facts and her own perceptions. *See State v. Metcalf,* No. 331, 1991 WL 102684 (Tenn. Crim.App. at Knoxville, June 14, 1991) (holding that "it is well settled that a witness may testify as to what he perceived"). Moreover, because the ordinary lay person would know that another person was physically impaired, an expert witness was not necessary. As such, we conclude that expert testimony was not necessary to corroborate the lay testimony of Ms. Spangler regarding her mother's physical condition.

The appellant also contends that, even if the State can prove the victim's physical vulnerability, the appellant did not take advantage of the victim's age and physical disability during the commission of the offense. *See Butler,* 900 S.W.2d at 313; *State v. Seals,* 735 S.W.2d 849, 854 (Tenn.Crim. App.1987). We disagree. This is a different situation than one where the victim's vulnerability is irrelevant to the crime in question. *See, e.g., Butler,* 900 S.W.2d at 313 (defendant shot first victim who came down stairway; victim was not particularly vulnerable due to age and use of cane); *Seals,* 735 S.W.2d at 854 (crime involved theft from mailboxes; victims not particularly vulnerable due to advanced age). Although the appellant did not purposefully seek out the victim due to her vulnerable condition, the victim's physical infirmities were a contributing factor in the ultimate outcome, her death.

Furthermore, the determination of whether the victim is "particularly vulnerable" is a factual issue to be resolved by the trier of fact on a case by case basis. *Adams*, 864 S.W.2d at 35. The trial court found that the victim's age and infirmities made her particularly vulnerable considering the evidence indicating that the appellant's approach may have been noticed by a person without physical limitations. Although we concede that the issue presented is a close question, we defer to the trial court's findings absent evidence to the contrary. Thus, we conclude that the trial court correctly applied this enhancement factor to the appellant's sentence.

### 2. *Weight Given to Appellant's Prior Conviction*

The appellant contends that the trial court gave excessive weight to the appellant's prior felony conviction for possession of marijuana. Specifically, the appellant argues that, because this charge arose five years before the current charge and because she had been released from probation early due to exemplary behavior, this conviction is not sufficient to raise her sentence to the maximum within the range.[4] Even if, the trial court weighed this factor more heavily than the appellant feels appropriate, the court's decision to do so is proper given the discretion allowed a trial court in considering enhancement factors. *See State v. Moss*, 727 S.W.2d 229, 238 (Tenn.1986) (legislature has left weight of applicable factors to guided discretion of trial court when "balancing the relative degrees of culpability within the totality of the circumstances of the case involved"). Thus, the weight afforded to the appellant's prior conviction by the trial court does not constitute error.

### 3. *Presence of Mitigating Factors*

The appellant argues that her sentence does not reflect the presence of the

mitigating factors found by the trial court. The trial court did not find the presence of any enumerated statutory mitigators. However, the court noted the presence of two non-enumerated mitigators: the appellant's remorsefulness and her willingness to accept responsibility for her role in the death of Katie Spangler. The court found that the presence of these two factors "amounts to, in essence, a single mitigating factor." In addition to the two enhancement factors and the non-enumerated mitigating factor, the trial court considered the fact that the appellant had been "less than completely candid with the Court about [her] past experiences, particularly those in South Carolina."[5] In setting the length of the appellant's sentence, the trial court stated that "this offense and the facts of this case require that this Court impose the maximum penalty in this case."

In determining the appropriate sentence for a felony conviction, Tenn.Code Ann. § 40–35–210(c) (1990) instructs the sentencing court that "[t]he presumptive sentence shall be the minimum sentence in the range if there are no enhancement or mitigating factors." If there are enhancement and mitigating factors, the court must start at the minimum sentence in the range, then enhance the sentence in accordance with the enhancement factors, then reduce the sentence in accordance with the mitigating factors. Tenn.Code Ann. § 40–35–210(e) (1990). The appellant asserts that the trial court failed to reduce her sentence in accordance with the applicable mitigating factors.

The appellant's sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years. Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sen-

---

4. It appears that, in arguing this position, the appellant assumes that the application of the "vulnerability of the victim" enhancement factor was erroneously applied by the trial court.

5. Consideration of the defendant's truthfulness is appropriate in sentencing matters. A defendant's candor is probative of his/her amenability

to rehabilitation. *See United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978); *State v. Poe*, 614 S.W.2d 403, 404 (Tenn.Crim.App.1981); *State v. Wilson*, No. 03C01–9312–CR–00408, 1995 WL 89352 (Tenn. Crim.App. at Knoxville, Mar. 6, 1995).

tencing Act and its findings are adequately supported by the record. *Hayes,* 899 S.W.2d at 185 (citing Sentencing Commission Comments, Tenn.Code Ann. § 40–35–210; *Moss,* 727 S.W.2d at 237; *see Ashby,* 823 S.W.2d at 169.). As the supreme court noted in *Moss,* 727 S.W.2d at 237:

> [T]he Legislature has provided only for ranges within which a determinate sentence will be imposed and has not chosen to assign any controlling value to these mitigating and enhancement factors in how they are weighed in determining where within the appropriate range a particular defendant's sentence should fall. Such a statutory scheme grants the exercise of discretion to the sentencing court.... A systematic application of these provisions of the Act cannot be reduced to a mechanical process or a formula; rather, these statutes entrust sentencing decisions to trial courts in the first instance. These courts, familiar with their locale and having seen the evidence and the defendant, as well as possessing the benefit of experience in sentencing matters, should retain that discretion necessary to achieve all of the purposes of the Act.

The court, in *Moss,* specifically stated that "the Act does not attribute any particular value vis-a-vis how many years should be added or subtracted based on the presence of any of these factors." *Id.* at 238. "The weight to be afforded mitigating and enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved." *Id. See also State v. Marshall,* 870 S.W.2d 532, 541 (Tenn.Crim.App.1993).

■ For the purpose of review, the trial court must preserve in the record the factors it found to apply and the specific findings of fact upon which it applied the sentencing principles to arrive at the sentence. *Hayes,* 899 S.W.2d at 185 (citation omitted). This was done in the present case. The trial court assigned the non-enumerated mitigator little or no weight, in accordance with the discretion permitted him. Moreover, as we have stated before, the presumption of correctness applies to the trial court's determination if the trial court correctly applied the principles of sentencing and his findings are supported by the evidence in the record. Again, we conclude that the presumption of correctness applies, and the trial court's imposition of the maximum sentence of six years is justified.

### 4. *Non-conformance with the Criminal Sentencing Reform Act of 1989*

■ The appellant maintains that her sentence is not in accordance with the Sentencing Act, because the sentence received is greater than that deserved for the offense committed and because the sentence is not the least severe measure necessary to achieve the purposes for which it is imposed. Specifically, the appellant argues that "[V]ehicular homicide sentences at the top of the range should be reserved for those defendants whose actions are particularly aggregious [sic]." The appellant suggests that maximum sentences should only be imposed in cases where "the lives of individuals other than the victim were endangered" or in cases where "the defendant had a recent, prior history of DUI or other traffic related convictions." Although the appellant concedes "that each case must rest on its own facts," she notes that "the court should, nevertheless strive to establish a fair range of punishment for similar crimes upon which defendants and their attorneys can rely."

■ We are compelled to note that central to the purpose of the 1989 Sentencing Act and its strictures is the elimination of unjustified disparity and the expression of a fair sense of predictability of the criminal law and its sanctions. Tenn.Code Ann. § 40–35–102(2)(1990). Trial courts are permitted to exercise their discretion in determining the sentencing alternatives or the length of the term of confinement and by imposing different sentences depending upon the nature of the crime, the characteristics and history of the criminal, and the circumstances surrounding the particular offense involved. *Moss,* 727 S.W.2d at 235. The sentencing act, however, guides the trial court's discretion by establishing general sentencing principles that must be followed. In order for the act to be successful, the act must be applied on a case-by-case basis, tailoring

each sentence to that particular person based upon the facts of that case and the circumstances of that defendant. *Id.* The policy expressed is that the punishment imposed should fit the crime *as well as* the offender. *Id.* (emphasis added). *See also State v. Dowdy,* 894 S.W.2d 301, 305 (Tenn.Crim.App. 1994) (discussing the individualized nature of alternative sentencing).

In the present case, the trial court correctly applied the sentencing principles to the facts and circumstances of this case. As such, we cannot find error in the trial court's determination. This issue is without merit.

### B. Probation

The appellant argues that she should have been granted total probation as she met her burden of proving herself suitable for a suspended sentence. The determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquiries. These inquiries require a different burden of proof. Thus, even though the appellant, a class C offender, is presumed to be a favorable candidate for alternative sentencing, Tenn.Code Ann. § 40–35–102(6)(1994 Supp.), the appellant has the burden of establishing her suitability for total probation.[6] Tenn.Code Ann. § 40–35–303(b)(1994 Supp.).[7] To meet the burden of establishing suitability for full probation, the appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Bingham,* 910 S.W.2d 448, 456 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1995) (citing *State v. Dykes,* 803 S.W.2d 250, 259 (Tenn.Crim.App.1990)).

In determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. Tenn. Code Ann. §§ 40–35–210(b)(4), –103(5), –103(1)(B)(1990). *See also Bingham,* 910 S.W.2d at 456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *Id.* (citing *State v. Fletcher,* 805 S.W.2d 785, 788–89 (Tenn.Crim.App.1991)). The proof in the record reveals that the circumstances of this offense were offensive and reprehensible.[8] The appellant was forty years old and familiar with the destructive consequences of alcohol. By the appellant's own admission, she was "drunk that day and under the influence of alcoholic beverages, and voluntarily chose to drive an automobile that afternoon." Her callous indifference to others is further manifested by the fact that her automobile traveled a total of three hundred and ninety-six feet off the highway, of which fourteen feet were airborne. During this episode, the victim was killed. There is no evidence to show that the appellant made any attempt to stop her vehicle. To the contrary, the evidence shows that her destructive course would have continued but for the presence of a large tree. The record also reflects that measures less restrictive than confinement have failed in deterring the appellant's conduct. Based on the nature and circumstances of this offense, the appellant's past behavior and lack of rehabilitative potential, and the need to deter drunk driving,[9] we

---

6. Even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law. Sentencing Commission Comments, Tenn.Code Ann. § 40–35–303 (1994 Supp.).

7. This provision provides that "nothing in this chapter shall be construed as altering any provision of present statutory or case law requiring that the burden of establishing suitability for probation rests with the defendant."

8. As the trial judge stated, "If we can't be safe in our homes and on our property from the effects of drunk driving, we are in sad shape."

9. At the sentencing hearing, the State presented evidence to illustrate the need for a deterrence to alcohol related offenses. *See State v. Bonestel,* 871 S.W.2d 163, 169 (Tenn.Crim.App.1993). Specifically, the State introduced the following as exhibits: *Tennessee Motor Vehicle Traffic Accident Facts—1988—1992, Knox County—Statistics from General Sessions Court—Criminal Division—1992,* and *Knox County—Statistics from*

conclude that the appellant has failed to establish her entitlement to total probation.

### IV. Conclusion

After a review of the record before us, we conclude that the trial court did not err by refusing to recuse himself from the sentencing phase of the proceeding. Furthermore, as the record demonstrates that the trial court correctly applied and considered the relevant sentencing principles, we conclude that the sentence imposed by the trial court is justified. Accordingly, the judgment of the trial court is affirmed.

PEAY and TIPTON, JJ., concur.