IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 17, 2002

## STATE OF TENNESSEE v. GEORGE WILLIAM KING

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-A-317     Steve R. Dozier, Judge**

---

**No. M2001-02026-CCA-R3-CD - Filed November 13, 2002**

---

Defendant, George William King, has appealed the sentence imposed upon him by the trial court after he pled guilty to one count of statutory rape. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Trial Court is Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Robert Turner, Nashville, Tennessee, for the appellant, George William King.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant pled guilty to one count of statutory rape, a Class E felony, in violation of Tenn. Code Ann. § 39-13-506. The length and manner of serving the sentence, including consideration of judicial diversion, was submitted to the trial court for determination. Following a sentencing hearing, the Defendant was sentenced to eighteen months, with all but ten days suspended. The ten days must be served day for day on five consecutive weekends. Defendant is to serve the suspended portion of the sentence on probation. On appeal, the Defendant contends that the trial court erred in (1) denying judicial diversion; (2) failing to sentence the Defendant to the minimum sentence; and (3) failing to grant the Defendant full probation. The Defendant asks us to modify his sentence, arguing that he should receive twelve (12) months probation.

This Court's review of the sentence imposed by the trial court is de novo with a presumption that the trial court's determination is correct. Tenn. Code Ann. § 40-35-401(d). This presumption applies when the record affirmatively shows that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999). In

conducting a de novo review, this court must consider "(1) the evidence, if any, received at the trial and sentencing hearing, (2) the pre-sentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the Defendant made on his own behalf and (7) the potential for rehabilitation or treatment." *State v. Fletcher,* 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991). The Defendant has the burden of proving that the sentence is improper. *State v. Bingham*, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995).

We note at the outset that the record before this Court does not contain a transcript of the guilty plea submission hearing. In order to ascertain all the facts and circumstances surrounding the Defendant's offense, the guilty plea transcript is usually necessary. *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). When a Defendant pleads guilty, the guilty plea hearing affords the only opportunity for the State to present the facts upon which the Defendant's guilty plea is based. *Id.,* at 843. Because the facts and circumstances of the offense are important in the trial court's sentencing determination, this court must usually presume that the trial court's sentence is correct in the absence of a guilty plea transcript. *Id.* at 844.

In addition, the Defendant did not submit a statement with the pre-sentencing report, and the victim, K.D., did not return the victim impact statement. (The victim will be referred to by her initials.) K.D. also did not testify at the sentencing hearing. Therefore, this Court's review of the Defendant's issues is limited to the brief facts in the pre-sentencing report, and the Defendant's testimony at the sentencing hearing.

At the sentence hearing, the Defendant testified that he first met the victim, K.D., in west Nashville when he spotted her walking down the street. The Defendant pulled his car over and asked K.D. if she wanted a ride. At that time, the Defendant was in his early seventies, and K.D. was twelve years old. After K.D. got in the Defendant's car, he took her to a fast food restaurant for a hamburger. During this meeting, they exchanged phone numbers, and talked frequently on the telephone over the next two years. As the friendship progressed, the Defendant often transported K.D. to and from school.

When K.D. was fifteen years old, she ran away from home and went to stay at a friend's house. K.D. called the Defendant and told him that her friend's mother wanted her to pay rent. The Defendant gave K.D. money for this purpose. Soon thereafter, her friend's mother asked K.D. to leave, and K.D. again called the Defendant for help. When she told him her mother and father would not let her come home, the Defendant took her into his home, and the two lived together for the next few months. The Defendant was aware of K.D.'s age, but testified that their sexual relations just happened as they watched television. During the time they lived together, K.D. and the Defendant had sexual intercourse five or six times, and the Defendant provided K.D. with food and pocket money.

In September, 1999, after a referral, the police interviewed the Defendant about his relationship with K.D. At this point, K.D. was removed from the Defendant's home and returned

to her parents. However, the next month, K.D. ran away again. Once more, she called the Defendant to come get her because she had no place to stay. The Defendant picked her up and took her to a friend's home for the night. When her parents would not take her back, K.D. returned with the Defendant to his home. In about a week, the Department of Children's Services received another referral and again interviewed the Defendant about K.D.'s current living arrangements. The Defendant admitted he knew where K.D. was and arranged a meeting spot where he could drop K.D. off. After this second runaway attempt, K.D. was placed in foster care. The Defendant testified that he did not have sex with K.D. during this week. Subsequently, the Defendant was indicted on February 18, 2000.

At the sentencing hearing, the Defendant asked the court to grant him judicial diversion, pursuant to Tenn. Code Ann. § 40-35-313, for a period of twelve months. In support of his request, the Defendant testified that he had no criminal record and was not involved with drugs or alcohol. The Defendant stated that he was retired from the Air Force with an honorable discharge after twenty-four years of service. At the time of the offense, the Defendant was gainfully employed as a security guard, working full-time for one company, and weekends for another. Since his indictment, the Defendant said that he had lost his full-time employment when his employer learned of the charges against him. However, the Defendant was able to increase his work hours with the second company, but feared he would not be able to continue as a security guard unless he was granted judicial diversion. The Defendant supports his invalid sister, and has no other dependents. During his testimony, the Defendant expressed remorse and pointed out that he cooperated with the Department of Children's Services when K.D. ran away the second time. The Defendant also offered as a mitigating factor the fact that K.D. had not suffered any bodily injury.

The State argued at the sentencing hearing that the Defendant should receive a period of split confinement, listing the Defendant's abuse of trust and desire to gratify his pleasure as enhancement factors under Tenn. Code Ann. § 40-35-114. The State also asked the court to consider K.D.'s vulnerability as a runaway in its sentencing decision.

Upon the conclusion of the hearing, the trial court denied the Defendant's request for judicial diversion as well as full probation, and sentenced the Defendant as a Range I offender to eighteen months, suspended except for ten days to be served on five consecutive weekends.

### I. Judicial Diversion

The Defendant argues that the trial court abused its discretion in not granting him judicial diversion, and contends that the record does not contain sufficient evidence to support the court's denial. We disagree.

The trial court may, in its discretion, grant judicial diversion to a Defendant who meets the minimum statutory requirements outlined in Tenn. Code Ann. § 40-35-313. That is, the Defendant (a) must be convicted of or plead guilty to a misdemeanor punishable by incarceration or a Class C, D, or E felony; (b) has not previously been convicted of a felony or a Class A misdemeanor and (c)

consents to the imposition of a probationary period at the maximum amount of time allowed. However, compliance with these requirements does not mean that a Defendant is entitled to judicial diversion as a matter of right, and the decision is left to the discretion of the trial court. Tenn. Code Ann. § 40-35-313; *State v. Parker,* 932 S.W.2d 945 (Tenn. Crim. App. 1996). A Defendant seeking judicial diversion does not enjoy a presumption of entitlement that is extended to a Defendant seeking alternative sentencing. *Parker,* 932 S.W.2d at 958. Except for the fact that judicial diversion is considered after a determination of guilt, judicial diversion is similar to pretrial diversion, and the analysis applied to a review of a prosecutor's decision not to grant pretrial diversion is also applicable in the denial of a request for judicial diversion. *State v. Anderson,* 857 S.W.2d 571, 573 (Tenn. Crim. App. 1992). In either situation, as long as the record contains any substantial evidence to support the trial court's findings, this Court will not interfere with the trial court's refusal to grant the Defendant judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled in part on other grounds, State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

The trial court must consider the following criteria when evaluating whether an eligible Defendant should be granted judicial diversion: (1) the attitude and behavior of the Defendant since arrest; (2) the Defendant's amenability to correction; (3) the circumstances of the offense; (4) the Defendant's criminal history; (5) the Defendant's social history; (6) the Defendant's physical and mental health; (7) the deterrence value to the Defendant as well as to others; and (8) whether judicial diversion would serve the ends of justice, considering the interests of the public as well as the Defendant. *Parker,* 932 S.W.2d at 958; *State v. Cutshaw*, 967 S.W.2d 332, 343-345 (Tenn. Crim. App. 1997). In essence, the trial court must consider any factors which may indicate that the Defendant is likely to be a repeat offender. *State v. Hammersley,* 650 S.W.2d 352, 355 (Tenn. 1983).

In addition, the record must reflect that the trial court considered all of these factors in making its determination, and, in its analysis, explain why the Defendant does not qualify for judicial diversion. *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *Bonestel* 871 S.W.2d at 168. Further, if the court based its decisions on only some of the enumerated criteria, it must explain why these factors outweighed the others. *Electroplating, Inc.,* 990 S.W.2d at 229.

In this instance, the trial court did not adequately explain on the record why the Defendant was denied judicial diversion as required in *Bonestel*, or why the factors relied on weighed more heavily than others. *Id.* After determining the applicable enhancement and mitigating factors, the trial court merely said:

> Mr. King, through his advanced age and experience, is sort of taking an advantage of the situation he finds [K.D.] is [sic], the runaway status; buy her some food and become acquainted with her and let her stay and let her watch TV and let her come in my bed [sic], and things led to him being charged with this criminal offense. . . .

-4-

Now that's not much [an eighteen month sentence], in terms of this particular situation; but I'm doing that, based on – well, from Mr. King's perspective, he doesn't wanta [sic] do anything and wants expungable probation, which is asking for a lot in this particular situation.

Because I think if you granted Mr. King expungable probation, you would be depreciating the seriousness of this offense.

Although the trial court could have been more detailed in its findings, this does not preclude our review, and we must determine if the trial court's decision is correct despite the lack of a detailed analysis. *Id.*

The Defendant argues that the trial court denied the Defendant's request for judicial diversion solely because judicial diversion would depreciate the seriousness of the offense, a conclusion not supported by the evidence in the record. If that is the only basis for denial, the Defendant argues, anyone convicted of statutory rape would always be denied judicial diversion.

The denial of judicial diversion may be based solely on the nature and circumstances of the offense, so long as all of the other relevant factors have been considered, and this factor outweighs all others that might favorably reflect on the Defendant's eligibility. *See State v. Curry,* 988 S.W.2d 153, 158 (Tenn. 1999). In its findings, the trial court focused on the Defendant's abuse of K.D.'s trust, gained by virtue of the Defendant's age and experience, and his friendship and support over a number of years. The trial court considered the seriousness of the Defendant's exploitation of that trust when he commenced and continued sexual relations with K.D. at a time when she was homeless and without other means of support.

However, the record shows that the trial court was also concerned with the Defendant's attitude and behavior following his initial interview with the police, and the Defendant's apparent lack of amenability to rehabilitation. The Defendant voluntarily took K.D. back into his home after he was put on notice that his cohabitation with the girl was illegal. When she came for help the second time, the Defendant could have easily contacted the Department of Children's Services and reported her whereabouts. Instead, he waited over a week, before the Department learned that K.D. had run away again before turning K.D. over to the Department. In addition, the Defendant was aware at all times of K.D.'s age and family problems. The record reflects that the trial court also felt that the Defendant lacked sincerity in his remorse and did not appear to comprehend either the seriousness of his actions or sufficiently demonstrate that he would not do such actions again. *See, e.g., State v. Anderson,* 857 S.W.2d at 574; *Electroplating, Inc.,* 990 S.W.2d at 228.

The trial court is best suited to judge the demeanor and testimony of the Defendant at the sentencing hearing, and we will give great weight to the trial court concerning the credibility of the Defendant unless the evidence preponderates otherwise. *Parker*, 932 S.W.2d at 956. Based upon all of the facts and circumstances available for review, it is apparent that the negative factors

discussed above outweigh the Defendant's otherwise stable background. Accordingly, we find that there is evidence in the record to support the trial court's denial of judicial diversion to Defendant.

## II. Length of Sentence

The Defendant next argues that the trial court erred in not sentencing the Defendant to one year, the minimum Range I sentence for a Class E felony. By setting the Defendant's sentence at eighteen months, the Defendant contends that the trial court improperly balanced and applied the enhancement and mitigating factors. The Defendant argues that the mitigating factor offsets the enhancement factor, and the sentence, therefore, should be set at the minimum level as if no factors existed at all.

As a Range I offender, the Defendant is subject to a sentence of not less than one nor more than two years for the commission of a Class E felony. Tenn. Code Ann. § 40-35-112(a)(5). If there are no enhancement or mitigating factors present as defined in Tenn. Code Ann. §§ 40-35-113 and 40-35-114, the presumptive sentence for a Class E felony is the minimum sentence of one year. Tenn. Code Ann. § 40-35-210(c). If both mitigating and enhancement factors are present, the court starts with the minimum sentence, and first enhances the Defendant's sentence as appropriate within the range, then reduces the sentence as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e).

The weight placed on one factor by the trial court may vary from that assigned to another, and the legislature has specifically declined to assign a numeric value to mitigating and enhancement factors. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-210; *State v. Boggs,* 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). Even if the Defendant feels that the trial court improperly weighed the enhancement factor more heavily than the mitigating factor, the trial court's discretion will not be disturbed as long as the sentencing principles are adhered to and its findings are adequately supported by the record. *Boggs,* 932 S.W.2d at 476; *State v. Hayes,* 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

At the sentencing hearing, the State argued that two enhancement factors were applicable. The State first contended that the Defendant violated the private trust existing between himself and K.D., and, secondly, that the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement. Tenn. Code Ann.§ 40-35-114(15) and (7). At the conclusion of the sentencing hearing, the trial court applied only Factor 15, violation of a private trust, and considered the age and experience discrepancy between the Defendant and K.D., their live-in relationship, and K.D.'s vulnerability as a runaway with no other place to stay.

A private trust involves a relationship in which the Defendant encourages the victim to place confidence, reliance or faith with the Defendant. *State v. Kissinger,* 922 S.W.2d 482, 488 (Tenn. 1996). This type of relationship usually contains a degree of vulnerability on the part of the victim, and it is the exploitation of this vulnerability in the commission of the offense which justifies application of the enhancement factor. *State v. Gutierrez,* 5 S.W.3d 641, 646 (Tenn. 1999).

Accordingly, when a minor victim is living in the same household as the Defendant, a private trust is generally presumed. *State v. Adams,* 864 S.W.2d 31, 34 (Tenn. 1993); *State v. Carico,* 968 S.W.2d 280, 286 (Tenn. 1998). However, the victim and Defendant need not be related in order to find a private trust. *See Adams*, 864 S.W.2d at 34. For example, a personal relationship between the Defendant and victim where the Defendant acts as the victim's friend, paying for food and other items, is a sufficient basis for finding a private trust. *See State v. McKnight,* 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994).

Based on our review of the record, it is apparent that Defendant and K.D. shared a relationship based on private trust. The Defendant was in his seventies, and K.D. was in her early teenage years when the relationship started. The Defendant was aware of K.D.'s family difficulties, and for two or three years, the Defendant acted as K.D.'s friend, talking with her "constantly" on the telephone, and transporting her back and forth from school. When K.D. ran away for the first time, she turned to the Defendant for help paying her rent at a friend's house. When her friend told K.D. she could no longer stay with her family, K.D. again turned to the Defendant for shelter and support. The Defendant took K.D. into his home, and they lived together for the next few months. It was during this time, when K.D. was particularly vulnerable to the Defendant's offers of friendship and support, that the Defendant engaged in sexual relations with K.D. In the pre-sentence report, K.D. stated that her mother was aware that she was staying with the Defendant. K.D. further stated in the report that she engaged in sex with the Defendant five times in exchange for money for her family. Even after K.D. was removed from the Defendant's home in September, 1999, the Defendant was the first one she called when she ran away the following month. The Defendant took her in again, living with K.D. for a week, before relinquishing her to the Tennessee Department of Children's Services after they inquired about K.D.'s location.

In many respects, then, Defendant acted not only as K.D.'s friend, but also her surrogate family, entrusted with her care and protection when she had nowhere else to go. Accordingly, we concur with the trial court that Factor 15 could properly be used to enhance the Defendant's sentence. *See State v. Kissinger*, 922 S.W.2d at 489.

The trial court also considered, as a mitigating factor, the fact that the Defendant did not cause K.D. any bodily injury or harm, primarily because the State did not object to the Defendant's characterization of the relationship as voluntary, and there was no evidence in the record to conclude otherwise. Tenn. Code Ann. § 40-35-113(1). However, based on the facts and circumstances surrounding the Defendant's offense, the trial court assigned the mitigating factor little or no weight in its determinations.

As long as the trial court follows the principles of sentencing, and its findings are supported by the evidence in the record, the presumption of correctness applies. *State v. Boggs,* 932 S.W.2d 467, 476 (Tenn. Crim App. 1996). The weight assigned to a particular factor is derived from "balancing relative degrees of culpability within the totality of the circumstances of the case involved." *Id.* In this case, the trial court found the lack of bodily injury of little importance compared with the Defendant's exploitation of K.D.'s trust. The assignment of little, if any, weight

to a particular mitigating factor is properly within the trial court's discretion. *See, e.g., State v. Smith*, 910 S.W.2d 457, 462 (Tenn. Crim. App. 1995) (the strength of three enhancement factors justifies imposing the maximum sentence even with the existence of a mitigating factor). Based on a review of the record before us, we find that the trial court did not abuse its discretion in assigning little, if any, weight to the mitigating factor offered by Defendant, and the length of sentence imposed is proper.

### III. Full Probation

The Defendant also challenges the imposition of a split confinement sentence, arguing that the record does not contain sufficient evidence to justify denying the Defendant full probation under Tenn. Code Ann. § 40-35-303. The Defendant contends that full probation may be denied on the basis of the nature and circumstances of the offense only if these factors are "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree." *State v. Hartley*, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). The Defendant argues that the evidence in the record does not support a finding that the Defendant's actions reach this level of offensiveness.

The Defendant's reliance on this Court's decision in *Hartley*, however, is misplaced when reviewing a denial of full probation. The analysis for whether the Defendant is eligible for alternative sentencing under Tenn. Code Ann. § 40-35-102 as discussed in *Hartley* is different from the analysis used to determine if the Defendant is eligible for full probation under Tenn. Code Ann. § 40-35-303. *Bingham,* 910 S.W.2d at 455 (Tenn. Crim. App. 1995). The Legislature specifically excluded convicted felons who have criminal records displaying a total disregard for the law and society's morals from the presumption of eligibility for alternative sentencing. All others are entitled to the presumption. Therefore, the State has the burden of proving that an offender who is not one of the excluded group should be denied alternative sentencing. If the State relies on the nature and circumstances of the offense to overcome the presumption, this Court has concluded that the circumstances must be particularly egregious and outweigh all other factors. *State v. Hartley*, 818 S.W.2d at 474.

The burden of proof, however, is shifted when a Defendant requests full probation, and the Defendant does not enjoy a presumption of eligibility as he does for alternative sentencing. Tenn. Code Ann. §40-35-303(b). Although the trial court must automatically consider probation as a sentencing option when the Defendant is granted alternative sentencing, the Defendant must prove that probation is in the best interests of both the public and the Defendant. Tenn. Code Ann. § 40-35-303(b); *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990).

In making its determination, the trial court may consider the circumstances of the offense, the Defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. *Boggs,* 932 S.W.2d at 477; Tenn. Code Ann. §§ 40-35-210(b)(4), -103(5), -103(1)(B). As with alternative sentencing, the trial

court may base its decision solely on the nature and circumstances surrounding the offense if these factors outweigh all others which might support probation. *State v. Fletcher,* 805 S.W.2d at 788-789; *Boggs,* 932 S.W.2d at 477. Moreover, while the circumstances surrounding the offense may not be egregious enough to deny the Defendant alternative sentencing under the *Hartley* decision, such circumstances may very well justify denial of full probation even though the Defendant is eligible for alternative sentencing. *Bingham*, 910 S.W.2d at 456; *Boggs*, 932 S.W.2d at 477.

The trial court found the nature and circumstances of this case so offensive and reprehensible as to warrant imposing a split confinement sentence on the Defendant in order to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B). In making its determination, the trial court weighed the Defendant's background and age against his abuse of K.D.'s trust over an extended period of time, his repetition of the offense after he was put on notice that his actions were illegal, and both his apparent incomprehension of the seriousness of the offense and his apparent lack of sincerity in his remorse. Upon our review of the record, we are unable to conclude that the trial court erred in determining that the Defendant had not met his burden of establishing suitability for full probation.

## CONCLUSION

For the reasons discussed above, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE