IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## STATE OF TENNESSEE v. MICHAEL E. RAINES

**Appeal from the Criminal Court for Davidson County**
**No. 2003-C-2300     Steve Dozier, Judge**

_____

**No. M2004-01996-CCA-R3-CD - Filed August 9, 2005**

_____

The defendant, Michael E. Raines, pled guilty in the Davidson County Criminal Court to attempt to commit second degree murder, a Class B felony. Pursuant to the plea agreement, the trial court sentenced the defendant as a Range I, standard offender to eight years with the trial court to determine the manner of service of the sentence. After a sentencing hearing, the trial court ordered that the defendant serve his sentence in confinement. The defendant appeals, claiming that he should have received alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and J.C. MCLIN, J., joined.

James P. McNamara, Nashville, Tennessee, for the appellant, Michael E. Raines.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Amy H. Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's assaulting Terry Hampton at a bar called the Crash Site Lounge. When the fight ended, the victim was taken to Vanderbilt Hospital for emergency surgery concerning wounds to his neck.

At the sentencing hearing, the state submitted the defendant's presentence report. Wendy Johnson testified that she was at the Crash Site Lounge on the night the fight occurred and that she witnessed what happened between the defendant and the victim. She said that an earlier altercation between the victim and another man, Daniel Holmes, had just concluded and the two men had walked away from each other when the defendant jumped up, broke a beer bottle, and jabbed the broken bottle into the victim's neck. She said the defendant broke the bottle on a fire extinguisher

and pushed her out of the way to get to the victim, who immediately started to sink to his knees after the defendant attacked him. She said she helped him down to the ground and placed her fingers over his jugular vein. She explained she was a retired emergency medical technician. She said that Mr. Holmes returned and that he and the defendant started kicking the victim in the head, the arms, and the side of his body. She said that the two men tried to pull the victim outside the lounge but that she lay on top of him and clamped the side of his neck to try to stop the bleeding. She said that the wound was as wide as a beer bottle and that his jugular was visible but that she was able to clamp it with her fingers. She said she dragged the victim's body underneath a table to prevent him from being kicked any further. She said that the defendant did not do anything to assist the victim after the attack and that she had not seen the defendant, the victim, or Mr. Holmes before that night.

On cross-examination, Ms. Johnson testified that she did not know what started the fight and did not hear any conversation between the defendant and the victim. She said she was an arm's length distance from the victim when the defendant cut him with the beer bottle. The trial court asked Ms. Johnson if she saw the victim hit the defendant, and she replied no. She explained that both she and the victim were facing away from the defendant and that they turned around when they heard the beer bottle break.

Terry Hampton testified that he did not recall being stabbed in the neck with the beer bottle, only someone telling him to stay on the ground. He said he had never met Ms. Johnson. He said that he underwent major surgery on his neck and that he went into a coma afterward. He said that the doctors told him he lost seven pints of blood and that they had not expected him to survive. He said the injury caused various problems: a permanent infection in his left ear, a lack of feeling from his chin and shoulder to his back, a pain in his heart region during physical exertion, and a pain in his leg. He said that he worked with concrete and that as a result of his injuries, work became difficult. As for psychological effects, he said he was mentally "destroyed" in that he had difficulty sleeping and was constantly paranoid. He said the experience had affected his relationships with his family and his girlfriend because he was angry all of the time. He said he was undergoing counseling.

On cross-examination, he admitted that he was "pretty well drunk" and had been taking Valium and cocaine on the day of the incident. He acknowledged that he had seen the defendant maybe four or five times during the past eight years but that they had never spoken to each other. He did not recall talking to the defendant while at the lounge but did recall talking to Mr. Holmes because they had "a thing going on" for a few months beforehand. He said he did not hit the defendant.

Michael Upchurch testified that he and the defendant had been friends for approximately twenty-five years and that he accompanied the defendant to the Crash Site Lounge on the night the incident occurred. He said he was sitting at the bar and facing the other direction when he heard the fight erupt between the victim and Mr. Holmes. He said that he turned around to see what was happening but that the fight had broken up by the time he looked. He said he turned back around and then heard a glass break. He said he turned around again and went to the end of the bar. He said

the victim was on the floor, bleeding, and the defendant was leaving through the back door. He said the defendant drove away in his car and did not return. He said that he drank ten to fifteen alcoholic drinks over the course of that day but that he recalled the events of that evening clearly. He said that he visited the defendant at his house the next day and that the defendant's tooth was loose and "hanging down lower" than the tooth beside it. He said that he had never known the defendant to be a violent person or a bully and that he had never seen him participate in a bar fight. He said that he and the defendant drank often but that the defendant did not have a drinking problem or any psychiatric problems as far as he knew. He said the defendant told him that the victim hit him in the mouth for no reason. On cross-examination, he admitted that he did not see the defendant's mouth get injured while he was at the bar.

Rebecca Holt, the owner of the Crash Site Lounge, testified that she was working as a bartender on the night of the fight and that she witnessed the incident but did not see how it started. She said she was approaching the men to tell them to stop fighting when she was hit by glass shards and splash from the beer bottle as the defendant broke it on the victim's head. She said she was fairly certain the beer bottle was full based on the amount of beer released when it hit the victim's head. She said that everyone in the bar told the defendant to go and that he left the scene in his car. On cross-examination, she testified she did not see the defendant stab the victim, only hit him on the head with the beer bottle. When questioned by the trial court, she admitted she did not see the victim hit the defendant.

The defendant testified that he was a thirty-nine-year-old construction worker. He said that he was diagnosed with bipolar disorder after being admitted to jail and that he was currently taking Thorazine, Depakote, and Prozac. He said he was taking his medications faithfully and felt a lot calmer since they were prescribed. He said that he had a drinking problem and that before he was arrested, he drank approximately one twelve-pack of beer, five days a week. Regarding the night of the incident at the Crash Site Lounge, he said the victim approached him while he was sitting at the bar and wanted to fight him. He said that he explained to the victim that he wanted no trouble but that the victim said he did not care. He said the victim demanded the defendant get out of his chair and stated repeatedly, "I'm whipping your ass." He said that he continued to refuse and insisted he wanted no trouble but that the victim would not take no for an answer. He said that his friend, Daniel Holmes, finally approached the two men to see what was happening and that Holmes and the victim started fighting. He said the fight lasted only three or four minutes and after it ended, the victim punched the defendant in the mouth, knocking his tooth loose. He said he hit the victim with a beer bottle and walked out the door. He said that he "felt terrible" about what happened at the bar and did not intend for anyone to get hurt but that the victim had attacked him.

The trial court asked the defendant how many times he hit the victim and why the victim required surgery on his neck if he hit the victim in the head as he claimed. The defendant responded that he hit the victim only one time on the side of the face and that he did not see the cut on the victim's neck. He denied jabbing anything into the victim's neck and was unable to explain why no one witnessed the victim's hitting him in the mouth.

On cross-examination, the defendant admitted having seven or eight beers and two or three alcoholic drinks on the night the fight occurred. He also admitted using marijuana approximately once a week since the age of fifteen, but he denied smoking any on the evening of the fight. He conceded that he had been on probation before and that he was charged for driving on a revoked license while on probation.

At the conclusion of the sentencing hearing, the trial court determined that several enhancement factors applied in the defendant's case. It found that the defendant had a prior history of criminal convictions or criminal behavior, noting that he had been convicted of numerous misdemeanor offenses including several DUIs, vandalism, simple possession, disturbing the peace, and other crimes probably related to his admitted "many-many year alcohol problem." See T.C.A. § 40-35-114(2). The trial court also found that the personal injuries inflicted upon the victim were particularly great, observing that the victim underwent eighteen hours of surgery, spent two and one-half days in the hospital, and, one year later, still suffered physical impairment as a result of the injuries inflicted upon him by the defendant. See T.C.A. § 40-35-114(7). It noted that the defendant employed the use of a deadly weapon during the commission of the offense and that a beer bottle used in the manner utilized by the defendant could have killed the victim. See T.C.A. § 40-35-114(10). The trial court found that the defendant stabbed the victim in the neck for no reason, accrediting Ms. Johnson's testimony over the defendant's claiming otherwise and noted that the victim would have died but for the quick action of Ms. Johnson and the surgical abilities of the doctors at Vanderbilt Hospital. The trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense and that this was further supported by consideration of the circumstances and nature of the offense, the defendant's problems with drugs, and his extensive use of alcohol.

On appeal, the defendant argues that alternative sentencing is warranted in his case, rather than confinement. He concedes that he is not presumed to be a favorable candidate for alternative sentencing because he was convicted of a Class B felony and admits that his criminal record contains nine misdemeanor convictions. However, he contends that he is still eligible for probation under T.C.A. § 40-35-303(a) because his sentence is eight years or less. He also contends that he is a good candidate for probation because he has no history of violent behavior or felony convictions. The state argues that the trial court properly denied alternative sentencing. We agree with the state.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing

under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. §§ 40-35-103(5), -210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4).

Initially, we note that any evidence presented at the guilty plea hearing should be considered in determining the appropriate sentence. See T.C.A. § 40-35-210(b)(1). However, the defendant has failed to include in the record on appeal a transcript of the guilty plea hearing relating to his conviction. It is the duty of the defendant to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. T.R.A.P. 24. Ordinarily, failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a full de novo review of the sentence under T.C.A. § 40-35-210(b). However, a full record of the witnesses and their testimony was developed in the sentencing hearing and suffices for review purposes.

We note that the defendant uses the phrases "alternative sentencing" and "probation" interchangably, as if they mean the same thing. However, a trial court's determination of whether a defendant is entitled to alternative sentencing requires a different inquiry than that when probation is considered. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When a defendant is entitled to the statutory presumption in favor of alternative sentencing, the state has the burden of overcoming the presumption. See T.C.A. § 40-35-102(6); Ashby, 823 S.W.2d at 169. On the other hand, a defendant has the burden of establishing suitability for total probation. See T.C.A. § 40-35-303(b); State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995).

In any event, because he was convicted of a B felony, the defendant was not entitled to the presumption that he is a favorable candidate for alternative sentencing. T.C.A. § 40-35-102(6). The trial court found that consideration of the defendant's criminal history, along with the circumstances and nature of the defendant's offense and his drug and alcohol problems, justified his serving his sentence in confinement. The trial court also found confinement was necessary to avoid depreciating the seriousness of the offense. It noted that the defendant's offense would have been one for murder, if not for the actions of Ms. Johnson and the surgical skills of the doctors involved in his surgery. We agree.

We also believe the record shows that measures less restrictive than confinement have not been successful with the defendant in the past. The defendant asserts that he has been on probation four times and contends this demonstrates that he responds well to supervision. We believe that four sentences of probation also demonstrate the failure of less restrictive measures to dissuade him from further criminal behavior. We conclude that the defendant has failed to demonstrate his suitability for probation or that his sentence of confinement is improper.

Based on the foregoing and the record as a whole, we affirm the trial court's denial of the defendant's request for alternative sentencing.

_____
JOSEPH M. TIPTON, JUDGE