# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 17, 2003

## STATE OF TENNESSEE v. DELSIE LUCILLE SARTAIN

**Direct Appeal from the Circuit Court for Bedford County**
No. 14954     Charles Lee, Judge

---

**No. M2002-02617-CCA-R3-CD - Filed December 23, 2003**

---

The Appellant, Delsie Lucille Sartain, was convicted by a jury for the reckless aggravated assault of a five-month-old baby, which resulted in permanent injuries. Following a sentencing hearing, the trial court imposed a sentence of three years and two months incarceration as a range I standard offender. Sartain appeals the sentencing decision, arguing that the trial court erred by ordering a sentence of total confinement rather than the less restrictive alternative of probation. After review, we find no error and affirm the judgment of the Bedford County Circuit Court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Donna Leigh Hargrove, District Public Defender; Curtis H. Gann, Assistant Public Defender, Shelbyville, Tennessee, for the Appellant, Delsie Lucille Sartain.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Christine M. Lapps, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Tina Bailiff employed the Appellant to care for her two small children, twenty-two-month-old Meaghan and five-month-old Nathan, while she worked at a local factory. This arrangement began on Monday, July 9, 2001. On Friday, July 13th, Mrs. Bailiff left the children with the Appellant at approximately 2:15 p.m. Since Mrs. Bailiff was working twelve-hour shifts on Friday and Saturday, the two had agreed that the Appellant would keep the children until Sunday morning. Between 10:00 and 11:00 a.m. on Saturday morning, July 14th, Mrs. Bailiff called the Appellant to

check on the children. The Appellant told her that both Nathan and Meaghan were fine but she needed a can of formula for Nathan. Mrs. Bailiff went to the Appellant's home with a can of formula between 2:00 and 2:15 p.m. Both children were fine. Mrs. Bailiff then went to work.

At approximately 10:00 p.m., the Appellant phoned Mrs. Bailiff at work and informed her "that something was wrong with Nathan; he wasn't breathing exactly right." Upon arrival, Mrs. Bailiff found that Nathan could not hold his head up, "hold his eyes open," and was "gasping for air." The Appellant claimed that Meaghan hit Nathan with a toy and fell on his chest. She stated that Nathan later became ill while eating some carrots. Mrs. Bailiff immediately took Nathan to the Bedford County Hospital, where he was "LifeFlighted" to Vanderbilt Hospital in Nashville. At Vanderbilt, Nathan exhibited injuries consistent with "Shaken Baby Syndrome." He suffered from "subdural hematomas, frontoparietal contusions, retinal hemorrhages, and seizures. He was placed on a respirator. Later he was placed in a drug induced coma to control his seizures." According to Dr. Mary Taylor, a Vanderbilt pediatric critical care unit physician, Nathan's symptoms indicated that he had sustained a life threatening brain injury. Nathan remained hospitalized for three and one-half weeks at Vanderbilt.

During questioning by the Bedford County Sheriff's Department, the Appellant admitted to shaking the five-month-old baby. She explained that, after Meaghan fell on Nathan, "she was scared, and his eyes were closed, and she was afraid he was hurt and she shook him until his eyes opened." She also claimed that she did not recall how hard she shook him. The Appellant also made a written statement, in which she admits that she "shook him until he opened his eyes, at the same time calling his name."

On August 20, 2001, the Appellant was indicted for aggravated child abuse. At trial, Mrs. Bailiff testified that Nathan was still receiving treatment and that she had to quit her job to care for him. She also testified that Nathan, who was then nearly a year and one-half old, received physical, occupational, and speech therapy four days a week but still could not walk, talk, or feed himself. She stated that, in order to "get around," Nathan "takes his left arm and he pulls himself. He scoots on his behind and he pulls himself across the floor." According to Mrs. Bailiff, "the right side of his face kind of droops. You can tell he has had a small stroke." The Appellant testified on her own behalf at trial. Following the conclusion of proof, the jury found the Appellant guilty of the lesser included offense of reckless aggravated assault.

A sentencing hearing was held September 16, 2002. The presentence report reflected one felony theft conviction in 1992, which involved the Appellant stealing pencils from her employer. Ms. Laura Prossor, a presentence officer with the Board of Probation and Parole, testified that, during her investigation, she learned that the Department of Child Protective Services had attempted to stop the Appellant from "babysitting because of the number of children she had." Mrs. Bailiff again testified about the extent of Nathan's injuries. Nathan, now nineteen months old, was still undergoing medical care. She stated that he continued to have seizures and was possibly blind in his right eye. Nathan was still unable to walk, talk, and feed himself. According to Mrs. Bailiff, he

was developmentally "about the age of an 8 month old child." Finally, Mrs. Bailiff testified as to Nathan's unpaid medical bills and other costs directly resulting from these injuries.

The Appellant, who had recently undergone triple bypass surgery, also testified at the sentencing hearing. She testified to her numerous medical conditions. She also expressed remorse and asserted that she did not mean to harm Nathan.

After consideration of the applicable enhancement and mitigating factors, the trial court imposed a sentence of three years and two months for the class D felony. The Appellant's request for alternative sentencing was denied, and she was ordered to serve her entire sentence in confinement in the Department of Correction. This appeal followed.

## ANALYSIS

On appeal, the Appellant argues that the trial court erroneously denied full probation.[1] When the sentencing court properly considers the relevant sentencing considerations, this court conducts a *de novo* review with the presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In this case, the presumption of correctness is applied as we find the trial court considered the sentencing principles and relevant facts.

Because the Appellant was convicted of a class D felony, she is entitled to the presumption that she is a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6) (2003). However, a defendant has the burden of establishing his suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. *Id.*; *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996).

To meet the burden of establishing suitability for total probation, an appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds, State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). When deciding suitability for probation, although not controlling, the sentencing court should use the following criteria: (1) the nature and circumstances of the criminal conduct involved, Tennessee Code Annotated § 40-35-210(b)(4) (2003); (2) the potential or lack of potential for rehabilitation, including the risk that during the period of probation a defendant will commit another crime, Tennessee Code Annotated § 40-35-103(5) (2003); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tennessee Code Annotated § 40-35-103(1)(B); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tennessee Code Annotated § 40-35-103(1)(B). *Bingham*, 910 S.W.2d at 456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a

---

[1]We note that the Appellant does not request review of the denial of any other form of alternative sentencing. She argues only that she is entitled to full probation.

nature as to outweigh all other factors favoring probation. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Upon *de novo* review, we find the facts and circumstances of this case to be such that probation is not appropriate. While given little weight by the trial court, the Appellant does have a prior theft conviction. The injuries arose while the Appellant was employed as a caretaker for the infant, thus, violating a trust relationship. Of significant importance, the Appellant's conduct resulted in serious and permanent impairment. As described at trial by Dr. William Cooper, a pediatrician at Vanderbilt, "Shaken Baby Syndrome" is a form of child abuse that occurs when someone

> will shake the baby very violently – not the type of – like you would shake a baby on your knee, this is violent back and forth. . . . Since the injuries include – because when the baby's head shakes back and forth so violently, the skull is hard, but the brain is soft, especially in babies because their blood vessels aren't fully developed, and their brain tissue isn't fully formed yet. As the brain moves back and forth at a very rapid speed, and blood vessels are torn both within the brain and also in the back of the eyes.

Nathan suffered permanent brain damage and, at the time of the sentencing hearing over a year after being shaken by the Appellant, was still suffering from seizures. Nathan was developmentally delayed and possibly blind in his right eye. Despite the Appellant's genuine remorse, the trial court, exercising its discretion, found that the Appellant was not suitable for probation. The victim was a defenseless five-month-old baby. We agree and find that the circumstances of the offense are of such a nature as to outweigh all factors favoring probation. *See State v. Grady Stanley Ingram*, No. 03C01-9612-CR-00464 (Tenn. Crim. App. at Knoxville, Jan. 8, 1998).

### CONCLUSION

For the above stated reasons, we conclude that the Appellant has failed to establish that her sentence of total confinement is improper. Accordingly, the sentencing decision of the Bedford County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE