IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 14, 2004

## STATE OF TENNESSEE v. CHRISTOPHER KIRKENDALL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-02070      W. Fred Axley, Judge**

---

**No. W2003-02393-CCA-R3-CD  - Filed November 30, 2004**

---

The appellant, Christopher Kirkendall, was convicted by a jury of aggravated robbery. Following a hearing, the trial court sentenced the appellant to twelve years incarceration in the Tennessee Department of Correction. The appellant now appeals, challenging the sufficiency of the evidence and the sentence imposed by the trial court. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed as Modified.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. GARY R. WADE, P.J., filed a separate concurring opinion.

Robert Wilson Jones, Shelby County Public Defender; W. Mark Ward, Assistant Public Defender (on appeal); and Robert Trent Hall, Assistant Public Defender (at trial), for the appellant, Christopher Kirkendall.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and David Pritchard and Jennifer Nichols, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On the afternoon of November 21, 2001, the victim stopped at a "local . . . corner store" to purchase a beverage. The victim testified at trial that as he got into his truck to leave, a man, later identified as the appellant, approached and asked for a ride. The appellant told the victim that he "wanted to catch up with his buddy just up the road." The victim agreed to give the appellant a ride. Although the victim did not know the appellant's name, he recognized him from the neighborhood.

The victim drove the appellant a short distance to a location indicated by the appellant. However, the appellant's friend was not at that location. The appellant asked the victim to "turn around." The victim complied and returned to the intersection where the "corner store" was located. He stopped his truck at a bus stop across the street from the store and "suggested that [the appellant] go ahead and get out there." Instead, the appellant asked the victim to drive him to nearby Canfield, where the victim assumed the appellant lived.

As the victim drove to Canfield, the appellant told him to stop. The victim complied. According to the victim, the appellant "turned to the right like he was going to get out and put his back to me and then he turned around with the pistol in his hand. . . . He said give me your money or I'm going to kill you." The victim removed his money from his shirt pocket, "wadded it up," and threw it out of the truck window. The appellant remained seated in the truck and told the victim, "I want your wallet too. . . . [G]ive me your wallet or I'm going to kill you." When the victim informed the appellant that he did not have a wallet, the appellant shot the victim in the right thigh. The appellant then exited the truck, and the victim drove away.

The victim drove home and told his mother to call 9-1-1. Shortly thereafter, the police and an ambulance arrived. After providing the officers with a report of the incident, the victim was taken to the hospital where he was treated and released.

Several days later, the victim observed a photograph of the appellant with the appellant's name underneath. The victim telephoned the robbery squad and gave Sergeant Ralph Peperone the appellant's name. Sergeant Peperone asked the victim to come to the robbery squad to view a photographic lineup. When the victim viewed the lineup, he immediately identified the appellant as the man who robbed and shot him.

Joe Stark, a crime scene investigator with the Memphis Police Department, testified that on November 21, 2001, he was called to investigate the crime scene in the instant case. When he arrived at the victim's house, he was informed that the victim had been involved in a shooting in his truck. Stark photographed the truck and dusted the passenger-side door for fingerprints. He was able to lift two sets of prints from the interior and the exterior of the door. He also discovered a spent casing on the floorboard. In the driver's seat, Stark observed a hole with what appeared to be blood around it. Believing it to be the bullet hole, he cut the hole open in an attempt to locate the bullet. Stark observed an indentation where the bullet had struck the metal plate underneath the seat, but he was unable to locate the bullet.

Nathan Gathright, a latent print examiner with the Memphis Police Department, testified that on December 11, 2001, he received a request from Sergeant Peperone to compare the prints lifted from the victim's truck with those of the appellant. Gathright found three matches. Bobby Spence, a fingerprint technician with the Records and Identification Division of the Shelby County Sheriff's Department (R & I), testified at trial that at the State's request he obtained prints of the appellant's fingers and compared them to the prints contained in R & I file number 305367, which file belonged to the appellant. The prints were a match.

-2-

Sergeant Ralph Peperone testified that on December 11, 2001, the victim telephoned and informed him that he had observed a photograph of the individual who had robbed and shot him. The victim also provided Sergeant Peperone with the individual's name. Sergeant Peperone obtained the fingerprints lifted from the victim's vehicle and asked the latent print examiners to compare them with the appellant's fingerprints. He was subsequently advised that the fingerprints were a match.

That same day, Sergeant Peperone telephoned the victim and asked him to come to the robbery squad and view a photographic lineup. Sergeant Peperone prepared a photographic lineup that included a photograph of the appellant. Upon viewing the photographs, the victim immediately identified the appellant as the individual who robbed and shot him.

Thereafter, the Shelby County Grand Jury returned an indictment, charging the appellant with two counts of aggravated robbery. Based upon the evidence presented at trial, the jury convicted the appellant as charged in count one of the indictment, but acquitted the appellant on count two. Following a hearing, the trial court sentenced the appellant to twelve years incarceration. The appellant now appeals challenging the sufficiency of the evidence and the sentence imposed by the trial court.

## II. Analysis

### A. Sufficiency of the Evidence

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is defined in pertinent part as "the intentional or knowing theft of property from the person of another by violence," accomplished with a deadly weapon. Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1) (2003).

In the instant case, the appellant's sufficiency claim is based upon the victim's identification of the appellant. Specifically, the appellant asserts that the victim's identification of the appellant

as the perpetrator of the offense is insufficient to support the verdict beyond a reasonable doubt. The identification of a defendant as the perpetrator of the offense for which he is on trial is a question of fact for the jury upon consideration of all competent proof. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The testimony of a victim identifying the perpetrator is, alone, sufficient to support a conviction. Id. at 87-88.

The proof at trial reflected that as the victim drove away from a convenience store a man asked him for a ride. The victim recognized the man from his neighborhood and agreed to give him a ride. During the drive, the man ordered the victim to stop the truck. The appellant then robbed and shot the victim. Several days later, the victim observed a photograph of the perpetrator of the offense. The man's name was located under the photograph. The victim reported the name to the police and, upon viewing a photographic lineup, immediately identified the appellant as the man who robbed and shot him. Moreover, latent prints lifted from the passenger-side door of the victim's truck matched those of the appellant. We conclude that this evidence is more than sufficient to sustain the appellant's conviction.

## B. Sentence

Next, the appellant contends that the sentence imposed by the trial court was excessive because the trial court misapplied certain enhancement factors. When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). However, this presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the record demonstrates that the trial court failed to consider the sentencing principles and the relevant facts and circumstances, review of the sentence will be purely de novo. Id.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offenses; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see also Ashby, 823 S.W.2d at 168. The burden is on the appellant to show that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

The appellant was sentenced as a Range I standard offender, for which the applicable range for a Class B felony is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (2003). The presumptive sentence for a Class B felony is the minimum within the applicable range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If the trial court finds that such factors do exist, the court must start at the presumptive sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range

as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). There is no mathematical formula for valuating factors to calculate the appropriate sentence. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the trial court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76.

At the sentencing hearing, defense counsel relied upon the presentence report. Defense counsel acknowledged the appellant's extensive juvenile record, but noted that this was the appellant's first conviction as an adult. The State submitted copies of the victim's impact statement and the appellant's juvenile history. The State also presented the testimony of the victim, who testified that the appellant had shattered his "sense of community" and that he now carried a pistol for protection.

Following the victim's testimony and the arguments of counsel, the trial court sentenced the appellant to twelve years incarceration, finding,

> I know that you possessed or employed a firearm during the commission of this offense and that you had no hesitation to commit this crime when the risk to human life was high. You could have killed him.
>
> You knew when you pulled that trigger the potential for bodily injury was great. And you pulled that trigger, oddly enough, after he had given you the money, not to make him give you the money because he had already done that. . . . Then I look at the fact you were adjudicated to have committed a delinquent act or acts . . . as a juvenile that would constitute a felony if it was committed as an adult.

Based upon these findings, it appears that the trial court applied the following enhancement factors:

> (10) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;
> (11) The defendant had no hesitation about committing a crime when the risk to human life was high;
> (17) The offense was committed under circumstances under which the potential for bodily injury to a victim was great; and
> (21) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult.

Tenn. Code Ann. § 40-35-114 (2003).

On appeal, the appellant challenges the application of enhancement factors (10), (11), and (17).[1] We conclude, and the State concedes, that because the use of a firearm was an essential element of the instant offense, enhancement factor (10) was applied in error. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). However, the State, without citing any authority, contends that because the appellant shot and wounded the victim after the completion of the robbery, application of factors (11) and (17) was warranted in the instant case. We disagree with the State's contention. This court has previously concluded that "[t]he offense of aggravated robbery necessarily entails a high risk to human life and a potential for great bodily harm." State v. Claybrooks, 910 S.W.2d 868, 873 (Tenn. Crim. App. 1994). Thus, enhancement factors (11) and (17) are inherent in the offense of aggravated robbery. Accordingly, we conclude that the trial court improperly applied enhancement factors (10), (11), and (17).

In his initial appellate brief, the appellant did not challenge the application of enhancement factor (21). However, prior to our review on appeal, the appellant filed a motion requesting this court to consider the impact on his sentence of the United States Supreme Court's decision in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004). This court has recognized that Blakely "calls into question the continuing validity of our current sentencing scheme." State v. Julius E. Smith, No. E2003-01059-CCA-R3-CD, 2004 WL 1606998, at *4 (Tenn. Crim. App. at Knoxville, July 19, 2004); see also State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 WL 1607002, at *9 (Tenn. Crim. App. at Knoxville, July 19, 2004). In Blakely, __ U.S. __, 124 S. Ct. at 2537 (citations omitted), the Supreme Court held that

> the "statutory maximum" for Apprendi [v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

In his Blakely argument, the appellant contends that his sentence should be reduced "because the trial court imposed sentence based upon facts not reflected in the jury verdict or admitted by the [appellant]." However, we note that at sentencing the appellant acknowledged that his juvenile record was extensive. Accordingly, we conclude there was no error in the application of enhancement factor (21). See State v. Tony O. Johnson, No. W2003-02098-CCA-R3-CD, 2004 WL

---

[1] The appellant also argues that the trial court applied the improper presumptive minimum sentence, starting at the midpoint in the range rather that the minimum. At sentencing, the trial court stated, "Now I considered at a midrange 10 years or 8 years as if I could go down from the 10 years and I couldn't." We are unable to conclude from this language that the trial court sentenced from the midpoint in the range. Rather, we believe that the trial court corrected his misstatement that the presumptive minimum was the midpoint, ten years.

2108234, at *6 (Tenn. Crim. App. at Jackson, Sept. 21, 2004); <u>State v. Steven M. Stinson</u>, No. E2003-01720-CCA-R3-CD, 2004 WL 1698203, at *8 (Tenn. Crim. App. at Knoxville, July 29, 2004). Nevertheless, because only one enhancement factor is applicable, we conclude that the appellant's sentence should be modified to ten years.

### III.  Conclusion

Accordingly, the appellant's sentence is modified to ten years confinement. The judgment of the trial court is otherwise affirmed.

_____
NORMA McGEE OGLE, JUDGE