IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 22, 2014 Session

## STATE OF TENNESSEE v. JACQUELINE NICOLE BOLDEN

**Appeal from the Criminal Court for Claiborne County**
**No. 2013CR1551    E. Shayne Sexton, Judge**

_____

**No. E2013-02324-CCA-R3-CD - Filed July 21, 2014**

_____

Defendant, Jacqueline Nicole Bolden, pled guilty to one count of theft of property in an amount more than $60,000, a Class B felony, with an agreed upon sentence of eight years as a Range I offender with the trial court to determine manner of service of the sentence. The trial court ordered Defendant to serve her eight-year sentence on "split confinement" with fifty days to be served on the weekends. Defendant was also ordered to perform one day of community service per month for the first three years of her sentence. On appeal, Defendant contends the trial court erred by denying her request for full probation. We conclude the trial court did not abuse its discretion in sentencing Defendant. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Robert R. Kurtz, Knoxville, Tennessee, for the appellant, Jacqueline Nicole Bolden.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Lori Phillips-Jones, District Attorney General; and Jared Effler, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

The transcript of the guilty plea submission hearing was not included in the record on appeal. However, from a reading of the record we glean that Defendant was the head teller

at the Home Federal Bank in Claiborne County. She stole approximately $83,376.55 from the account of two customers over a period of four years. One of the customers was an elderly widow. According to Defendant's sentencing memorandum, the bank also incurred costs of $56,969.68 for conducting an investigation and audit into Defendant's thefts. At the time of the filing of the memorandum, Defendant had repaid approximately $90,000. Defendant has never been charged or convicted of any other criminal offenses.

*Sentencing Hearing*

Alex Cook, President and CEO of Home Federal Bank, testified that Defendant was employed at the bank for approximately eleven years. He said that Defendant took money from the accounts of two customers, one of which was an elderly customer. At the sentencing hearing, Mr. Cook read a victim impact statement concerning Defendant's offenses:

> We're a small community bank with 95 employees. The trust and confidence that people have in our banking system is the very basis of the system. Our customers as well as customers of other banks have the right to expect banks and all bank employees to be completely honest, forthright and trustworthy in their dealings. Bank employees are held at a higher standard for that reason.
>
> [Defendant's] embezzlement was very expensive in money and time for our employees but also costly to our reputation. Bank thefts cause individuals in the community as a whole to look at the relationships that they have with their financial institutions. Home Federal Bank has been in business since 1920, and our community reputation and core values have been questioned due to [Defendant's] theft.
>
> We believed [Defendant] was a good employee. She appeared to handle transactions efficiently, she balanced well and knew the system, as what a bank needs in a head teller. However, [Defendant] took wrongful advantage of that knowledge and violated a position of trust. [Defendant] preyed on an elderly widow because she assumed due to her age and health conditions the widow would not come in the bank and might not monitor her accounts closely.
>
> [Defendant] earned approximately twenty-five thousand dollars ($25,000.00) per year, and she stole approximately eighty-three thousand dollars ($83,000.00). [Defendant] now says she stole this money to buy food and pay bills. That is completely different from what she told the three bank officers during her confession.

Home Federal Bank now feels that an appropriate period of incarceration followed by a lengthy period of strict probation and community service is needed to both punish [Defendant] for her theft and send a message to others that bank theft is a serious criminal offense [  ].

Mr. Cook estimated that Defendant performed at least twenty to twenty-two fraudulent transactions on the elderly widow's bank account.

During her allocution, Defendant told the trial court:

Your Honor, I would have never thought that I would ever have found myself where I am today. I worked for a wonderful corporation. They were like my second family, and I did take full advantage of that. When it [began], I did need to pay bills because my husband had trouble sometimes with alcohol and paying bills, and the money would be gone.

My son is a type one diabetic whose medical things are very costly each month, and I would give anything to go back and ask for help instead of trying to make a right with a horrible wrong.

My son is seven, and the only other person I had to count on to help with him was my mother-in-law and she passed away in March. And at this time, I have not taken a job because I don't have anyone at night to help with him because my husband took another job where he works third shift to try to make more money to help get the rest of this paid back.

We do help in the community, we volunteer with our little league football leagues, our basketball leagues, and we have for years. And anyone that knows me would know that this is something so out of character of myself.

I just ask for mercy from the Court in the sentencing today. And I want Alex to know that I am so sorry for taking advantage of my position at that bank and doing what I did.

## II.     Analysis

On appeal, Defendant contends the trial court erred by denying her full probation and by sentencing her to serve fifty days of confinement on the weekends. Defendant asserts that the trial court failed to apply the purposes and principles of sentencing and that the court misapplied the enhancement and mitigating factors. Therefore, Defendant contends that this

Court should conduct a de novo review of her sentence and "remand" the case to the trial court. We disagree.

Initially, we note that although the transcript of the guilty plea hearing was not included in the record on appeal, the record is adequate for this court to conduct a meaningful appellate review. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012)(This court should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *Bise*.); *see also* Tenn. R. App. P. 24 (b)(providing that the appellant has the duty to provide a fair, accurate, and complete record). As interpreted by the Tennessee Supreme Court, sentences imposed by a trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness." *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This standard of review extends to alternative sentences as well. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012)("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence."). When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 344-46 (Tenn. 2008).

In determining "the specific sentence and the appropriate combination of sentencing alternatives," the trial court must consider: (1) the evidence at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code. Ann. § 40-35-210(b).

Our sentencing law provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(5), (6). Additionally, a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. *Id*. § 40-35-102(6)(D). We note that "the determination of whether the [defendant] is entitled to an alternative sentence and whether the [defendant] is entitled to full probation are different inquiries." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The

-4-

defendant has the burden of establishing his or her suitability for full probation, even if the defendant should be considered a favorable candidate for alternative sentencing. T.C.A. § 40-35-303(b); *Boggs*, 932 S.W.2d at 477. In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether incarceration is appropriate, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant....

T.C.A. § 40-35-103(1); *see also Carter*, 254 S.W.3d at 347.

Defendant was an eligible candidate for probation. *See* T.C.A. § 40-35-102(6)(A). However, because she was convicted of a Class B felony, Defendant was not considered a favorable candidate for full probation. Tenn. Code Ann. §§ 39-14-105(5); 40-35-102(6)(A).

In considering Defendant's sentence in this case, the trial court made the following findings:

Yes, this is a thought provoking case. The question about, you know, appropriateness of a split confinement is one thing, but the - - what are the ends of justice and incarceration.

[Defendant] has set out her reasons for doing what she has done. However admirable they may be for her family, it still directs itself toward a victim, that we have someone - - someone here who was unable to defend herself from that type of financial marauding for lack of a better word. It's clear [Defendant] abused a position of trust within her - - within the bank and to the depositors of the bank, so that - - that is something that the Court - - it's not lost on the Court.

[Defendant's] allocution today is very telling. I think that she understands the wrongfulness of her conduct. I'm not - - I'm not sure based on a reading of the presentence investigation that she - - I guess the most maybe not troubling but concerning part of her statement in the PSI is basically defending the husband and the family, I understand that, but it's hard to say I did it because he was doing wrong, but I dearly love my husband, and it's troubling what might happen again.

What I'm going to do is this. I understand the health needs of the child. I'm not exactly sure how we get around all of those. But I think it is appropriate that there is some incarceration - that is appropriate. However, I do think that weekends is the more workable solution. What I'm going to do is this. I'm gonna order that she serve 50 days on weekends.

Even under a de novo review without a presumption of reasonableness, we cannot say that the trial court erred by ordering Defendant to serve fifty days of her eight-year sentence in confinement on the weekends. The trial court followed statutory sentencing procedures and gave due consideration to the factors and principles relevant to sentencing Defendant. The trial court properly considered the purposes and principles of the Sentencing Act. The manner in which the trial court ordered Defendant serve her sentence was not arbitrary or capricious and fully accords with statutory law. Accordingly, Defendant is not entitled to relief.

Based on our review of the record and applicable case law, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-6-