IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2015


**STATE OF TENNESSEE v. BRIAN ALLEN CATHEY**


**Appeal from the Criminal Court for Sullivan County
No. S60637      R. Jerry Beck, Judge**

_____


**No. E2014-02320-CCA-R3-CD – Filed October 16, 2015**

_____


The defendant, Brian Allen Cathey, pled guilty to one count of aggravated burglary, a Class C felony, and one count of theft of property of $1000.00 or more but less than $10,000, a Class D felony, in exchange for concurrent sentences of three and two years. After a sentencing hearing, the trial court denied an alternative sentence and ordered the defendant to serve his sentences in confinement. The only issue on appeal is whether the trial court erred by denying him an alternative sentence. Following our review of the briefs of the parties, the record, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT and TIMOTHY L. EASTER, JJ., joined.

Stephen M. Wallace, District Public Defender; and Joseph F. Harrison, Assistant District Public Defender, for the Appellant, Brian Allen Cathey.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Barry Staubus, District Attorney General; and James F. Goodwin, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**


At the defendant's guilty plea hearing, an affidavit of complaint set forth the facts underlying the defendant's guilty plea. The victims, Mr. and Ms. Harless, were away

from their home during Labor Day Weekend of 2011. On September 5, 2011, the victims returned to their home and noticed that a rear window of the home was broken. The victims contacted police, and Ms. Harless informed officers that "her bedroom had been ransacked." She reported that several pieces of her jewelry had been stolen and that the value of the jewelry exceeded $1000.00. The defendant lived next door to the victims, and during the investigation officers learned that he was a wanted fugitive. Officers were able to locate the defendant with the assistance of the United States Marshall's Office. A detective examined the records from a local Gold Rush business and learned that the defendant had sold three rings to the store on September 5, 2011. Ms. Harless identified the rings as the ones that had been stolen from her. The defendant acknowledged that facts contained in the affidavit were true, and he entered a knowing and voluntary plea of guilty.

At the alternative sentencing hearing, the trial court considered the presentence report. The court read excerpts from the victim impact statements that detailed the extensive mental anguish that the crime caused the victims. The court noted that the report detailed a prolonged history of drug usage by the defendant. The defendant began using drugs at the age of nine, when he started smoking marijuana. After the marijuana caused him to suffer nose bleeds, the defendant progressed to "mollies," which was a form of Ecstasy. The defendant used hydrocodone and oxycodone, but when those drugs became too expensive, he began using Suboxone. The report also indicated that the defendant had several prior convictions for misdemeanors in New York. The trial court observed that the defendant had a pending charge for possession of marijuana with the intent to resell that occurred after the offenses at bar.

The defendant testified that he was not married and did not have any children. He did not graduate from high school, but he received his GED in 2010. The defendant participated in a course titled "Alliance for Business and Training" through "YouthBuild," and he completed the course "[w]ith merit certificates." He was a "National Honors Graduate of YouthBuild" and received a leadership training certificate. The defendant studied carpentry at the Home Builders Institute, but his drug usage interfered with his education.

The defendant testified that he was currently employed as a roofer for a construction company. He worked twenty-five to thirty hours per week and was paid $8.50 per hour. He testified that he was addicted to "opioids, Oxycontin, roxies, Lortabs, [and] Percocets," in addition to hydrocodone and oxycodone. He admitted that he used marijuana three weeks prior to the sentencing hearing. He stated that he had not used "mollies" since he was seventeen years old. In an effort to combat his addiction, the defendant recently began going to a Subutex clinic and had received a prescription for the drug. He admitted that he began attending the Subutex clinic three weeks prior to the

2

sentencing hearing. The defendant maintained his innocence for his pending drug charges.

The defendant testified that his criminal convictions in New York stemmed from problems that he had with his stepmother. He was convicted of criminal mischief and placed on probation. He was later convicted of criminal contempt after violating a restraining order against his stepmother.

The defendant testified that he had not received any drug treatment but recognized that he needed it. The defendant expressed remorse for his crimes and wanted to apologize to the victims. He agreed that he committed the crime to obtain money to purchase drugs. He asked the court to impose an alternative sentence and for the court to allow him the opportunity to demonstrate that he could change. He requested that some form of drug treatment be included in his sentence. He stated that he planned to live with his mother if granted an alternative sentence. He explained that his mother was recently evicted and that they would be moving to a new address.

Ms. Harless testified that she had "never felt so violated in all of [her] life" as she did when she saw that her home had been burglarized. She testified that "it has been terrible ever since." She explained that several pieces of the stolen jewelry were heirlooms that were never returned to her. Ms. Harless testified that the defendant lived next door to her and her husband and that they had not had any problems with the defendant until the burglary and theft. Ms. Harless stated that she and her husband had been "terrified that something like [the break-in] could happen and [the defendant] would be right next door."

The trial court found that the defendant had a prior criminal record with misdemeanor convictions and "a long-term addiction to drugs." The court noted that the defendant's reported salary from his various jobs was less than the amount of money that he said he spent on drugs. The court also noted that the defendant had used marijuana three weeks before his sentencing hearing. In determining whether to grant the defendant probation, the court acknowledged the current overcrowding in state prisons and took into account the defendant's prior record and amenability to correction. The court found that the defendant had "gone years" with a drug problem that he did not attempt to address. The court found that the defendant's offenses were "particularly bad because of the victims he picked in this case, the destruction he did." The court noted that both victims were elderly and that the defendant could not return the stolen property because he sold it and spent the money on drugs. The court stated that a denial of probation would be based upon "the nature of the offense." The court found that the defendant's case differed from other cases of burglary and theft due to "the age of the victims; the amount of the theft; the Defendant's continued addictions; his history of using drugs and

3

spending great amounts . . . on drugs." The court declined to impose a sentence of probation.

The trial court next considered whether Community Corrections was a valid alternative to a sentence of incarceration. The court denied all forms of Community Corrections based upon the nature of the offense and the vulnerability of the victims due to their age, and it ordered the defendant to serve his effective three-year sentence in confinement.

## ANALYSIS

On appeal, the defendant argues that the trial court abused its discretion in denying him an alternative sentence. He contends that the trial court failed to properly apply the purposes and principles of the Sentencing Act.

When determining a sentence, the trial court must consider the following: (1) the evidence, if any, received at the trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make on his own behalf about sentencing. T.C.A. § 40-35-210(b) (2010). This court reviews the denial of an alternative sentence or probation under an "abuse of discretion standard, accompanied by a presumption of reasonableness." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court should uphold a sentence "so long as the statutory principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012).

A trial court has the authority to impose an alternative sentence, which may include a sentence of probation or Community Corrections. A defendant who is either an especially mitigated or standard offender and convicted of a Class C, D, or E felony "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(A). Here, the defendant was a standard offender who was convicted of Class C and D felonies, making him a favorable candidate for an alternative sentence. However, the trial court may decline to impose an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

4

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1)(A)-(C).

A defendant who receives a sentence of ten years or less may be eligible for probation. T.C.A. § 40-35-303(a). The defendant bears the burden of establishing that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). In determining whether full probation is appropriate, the trial court "may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). "The determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquires." *Id*.

The defendant was eligible for probation, as he received sentences of ten years or less. In considering whether to grant the defendant probation, the court acknowledged the overcrowding of prisons in the State. The court also considered the defendant's prior criminal record and amenability to correction. The trial court denied probation based upon the nature of the offense, citing the age of the victims, the amount of the theft, the defendant's continued drug addictions, and his history of using drugs and spending copious amounts of money to acquire drugs as the reasons for denying probation. The defendant has failed to meet his burden of establishing that he was a suitable candidate for probation, and we conclude that the trial court did not err in denying the defendant full probation.

A defendant who is not entitled to probation may still be eligible for Community Corrections. T.C.A. § 40-36-106(a)(1)(A) (stating that persons who, without this provision, would be incarcerated in a correctional institution are eligible for Community Corrections); *State v. Kristopher Blake Kincer*, No. E2013-01740-CCA-R3-CD, 2014 WL 2553429, at *5 (Tenn. Crim. App. June 2, 2014), *no perm. app. filed*.

Here, the trial court considered whether Community Corrections would be an appropriate alternative to incarceration. The court denied Community Corrections, again relying on the nature of the offense. Although the trial court did not explicitly state that confinement was necessary to avoid depreciating the seriousness of the offense, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence" should not negate the presumption of correctness afforded to the trial court's findings. *Bise*, 380 S.W.3d at 705-06. The trial court found that this offense was particularly serious due to the age of the victims and the permanent loss of property that the victims suffered. The record reflects that the trial court adequately considered the purposes and principles of the Sentencing Act, and we conclude that the court did not abuse its discretion in denying the defendant Community Corrections. Accordingly, the defendant is not entitled to any relief.

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

6