IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2015


**STATE OF TENNESSEE v. CHRISTOPHER FRALIX**

**Appeal from the Criminal Court for Sullivan County**
**No. S63182      R. Jerry Beck, Judge**

_____

**No. E2015-01115-CCA-R3-CD – Filed March 22, 2016**

_____

The defendant, Christopher Fralix, pled guilty to one count of robbery, a Class C felony, and one count of aggravated burglary, a Class C felony, in exchange for an effective sentence of six years. The trial court denied all forms of alternative sentencing and ordered the defendant to serve his sentence in incarceration. He now appeals, arguing that the trial court abused its discretion in denying an alternative sentence. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. ROGER A. PAGE, J., not participating.

C. Brad Sproles, Kingsport, Tennessee, for the Appellant, Christopher Fralix.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed Safeeullah, Assistant Attorney General; Barry Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

**FACTS AND PROCEDURAL HISTORY**

    This case arose after the defendant broke into the victim's home, assaulted her, and stole money and a cell phone from her. The facts are taken from the defendant's

presentence report containing statements from Detective Jonathan Carter, from the victim, and from the defendant regarding the incident that led to his convictions.

On the evening of the incident, the victim put her infant daughter to bed and watched a movie in her living room. Around 9:30 or 10:00 p.m., the victim heard a knock on her door. She opened the door and saw the defendant standing in the doorway. He was wearing a white shirt and black shorts. The defendant said that he wanted money, and the victim replied that she did not have any. The defendant grabbed her throat, pushing her back into the residence. He struck her in the face several times and continued to demand money. The victim eventually told the defendant that she had some money in her back pocket, and she handed him $140.00. He then told the victim that he was calling a ride and that she was not allowed to get up until he had departed. He also told the victim that he would leave her phone on the front porch. The victim stayed on the floor in her residence until the defendant was gone. She went to a neighbor's home, and the neighbor contacted police for the victim.

The victim identified the defendant by his first name when speaking with Detective Carter, and she told Detective Carter that she had met the defendant on a dating website. The victim later positively identified the defendant as her attacker. When police located the defendant, they received consent to search the residence where he was found. In the defendant's bedroom, officers found a white t-shirt and black pants with what appeared to be blood on them, along with bloody pillow cases on the bed. The victim's phone and identification were found under the defendant's bed. The phone was in three pieces, and the battery was removed. The victim's money was not recovered.

After this incident, the defendant was charged with one count of robbery, one count of aggravated burglary, one count of aggravated assault, and one count of aggravated kidnapping. He pled guilty to the counts of robbery and aggravated burglary in exchange for a six-year sentence and a dismissal of the aggravated kidnapping charge. The trial court held a hearing to determine the manner of service of the defendant's sentence.

At the hearing, the trial court considered the defendant's presentence report and noted that the defendant had over twenty convictions for criminal offenses in Tennessee, South Carolina, Florida, Ohio, Nevada, and Virginia, along with pending charges in Colorado. The defendant testified that the State's recitation of his prior convictions was accurate. The defendant testified that he had learned from his mistakes and was willing to accept whatever requirements the court would impose if he received an alternative sentence. He testified that he had problems with alcohol abuse, that he had been accepted into a rehabilitation program, and that he would be willing to attend the program. The defendant explained that he came to appreciate the value of his family while he was

incarcerated pending his sentencing hearing. He testified that he had learned that he could not "always do things [his] way." He stated that he could not currently enroll in a GED class but that he was studying independently to prepare for the test.

The defendant testified that he had been in the custody of the State since he was two years old. He spent time in various foster homes before he was adopted at the age of seven. He later returned to State custody but was released before his eighteenth birthday. The defendant testified that he wanted an alternative sentence so that he could spend more time with his biological mother and help care for her medical needs.

The defendant agreed that he had received thirteen disciplinary actions in the seventeen months that he was in jail between his arrest and the sentencing hearing. He agreed that one action was noted as recently as four months before his sentencing hearing. The defendant agreed that he had threatened a guard, although he disagreed that he threatened to kill the guard. He also agreed that he was verbally abusive, cruel, and threatening to his mother in phone calls that he made from jail before a prior bond reduction hearing. He agreed that he had asked his mother to say certain things when she was in court during the bond reduction hearing.

The defendant's mother testified that she had several serious medical problems. She testified that the defendant would assist her if he were released. She testified that she had noticed a recent positive change in the defendant's behavior. She stated that she would have no concerns if the defendant was released into the community.

The trial court denied the defendant alternative sentencing. The court found that the defendant had one of the most extensive criminal records that the court had ever seen. The court noted that the defendant's numerous misdemeanor convictions. The court cited to the defendant's numerous reported violations while in jail, stating that the violations "indicate a bad social history" and "prior bad conduct while in the jail." The court noted the "very negative presentence report," which included numerous convictions, "many of which [were] outstanding in other states." After considering the evidence presented at the hearing, the court denied all forms of alternative sentencing. The court also denied community corrections, finding that there was "no possibility that Community Corrections would benefit the Defendant or be in the best interest of the public."

## ANALYSIS

The defendant argues that the trial court abused its discretion by failing to consider the defendant's potential for rehabilitation. He also contends that the order to serve his sentence in confinement resulted in an excessive sentence. The State responds that the trial court properly sentenced the defendant.

3

When imposing a sentence, the trial court should consider: (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(b)(1)-(7) (2010). This court reviews the denial of an alternative sentence that falls within the appropriate range and reflects that the decision was based on the purposes and principles of sentencing under an "abuse of discretion standard, accompanied by a presumption of reasonableness." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court should uphold a sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *State v. Bise*, 380 S.W.3d 682, 709-10 (Tenn. 2012).

A defendant "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony[] should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6)(A). Additionally, a defendant who receives a sentence of ten years or less may be eligible for probation. T.C.A. § 40-35-303(a). However, the defendant bears the burden of establishing that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). In determining whether full probation is appropriate, the trial court "may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

4

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1)(A)-(C). Additionally, the trial court should consider the defendant's potential or lack thereof for rehabilitation or treatment in determining whether an alternative sentence is warranted. T.C.A. § 40-35-103(5).

The record supports the trial court's denial of an alternative sentence. The trial court denied probation based on the defendant's lengthy criminal history, and the court denied community corrections on the basis that it would not benefit the defendant or be in the best interest of the public. The trial court heard the defendant's testimony that he was willing to enter a rehabilitation program, but the court also considered the defendant's presentence report, which contains dozens of convictions for a variety of crimes in several different states. The trial court found that the defendant continued his criminal conduct while in jail, and the presentence report and the defendant's own testimony confirm that he received thirteen disciplinary actions while incarcerated and awaiting his sentencing hearing. The defendant's presentence report also indicates that measures less restrictive than confinement have been unsuccessfully applied to the defendant. Despite receiving probation for several of his prior convictions, the defendant continued to engage in criminal misconduct. We conclude that the trial court did not abuse its discretion in ordering the defendant to serve his sentence in confinement, and the defendant is not entitled to any relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

5